Rivera, Demandante y Apelante, *v.* The Porto Rico Drug Co., Demandada y Apelada.

## Apelación procedente de la Corte de Distrito de Ponce en pleito sobre daños y perjuicios.

No. 2594.—Resuelto en noviembre 26, 1923.

Daños—Negligencia—Maquinaria Peligrosa—Niños—Negligencia Contributoria—Tenedor de Licencia—*Trespasser*—*Invitee*.—La demandada poseía y mantenía un establecimiento en que estaba incluída la fabricación de mantecados y refrescos en la preparación de los cuales se usaba un motor eléctrico para el funcionamiento de maquinarias para picar el hielo y dar vueltas a las sorbeteras. La madre del menor demandante estaba empleada por la demandada como conserje del establecimiento y, con el consentimiento tácito de la demandada, utilizaba los servicios de su hijo dentro del establecimiento. En cierta ocasión, al acercarse al motor eléctrico el niño fué cogido por la blusa que usaba y herido gravemente. En varias ocasiones al demandante se le había permitido, si no inducido, por un ayudante del hombre que tenía a su cargo las sorbeteras, que hiciera ligeros trabajos, como lavar botellas, y como recompensa por tales servicios se le ofrecía y recibía mantecado u otras confecciones siempre que el producto acabado por alguna razón no pudiera ponerse a la venta. La prueba de la defensa indica una actitud de refractaria aquiescencia en la presencia del demandante en el local y además demuestra que el demandante estaba a punto de encontrar y apropiarse cualquier residuo que quedara en los envases después que se suponía estaban vacíos, así como también que él y otros niños habían sido repetidamente sacados del sitio donde ocurrió el accidente. *Se resolvió:* que ya se considere al demandante como un invitado, como que tenía una licencia, o como un *trespasser* en el sentido técnico, el sitio donde estas confituras se hacían se convirtió para él, y a todos los fines y efectos prácticos, en una trampa, y la demandada estaba puesta sobre aviso y tenía toda clase de razones para anticipar la presencia del demandante en cualquier época.

Id. — Id. — Id. — Cubierta de la Maquinaria — Negligencia de Empleados. — El accidente ocurrió como tres años antes de la fecha del juicio y de la inspección ocular que del local hizo el juez sentenciador. Si la caja o cubierta que él encontró, y que se dijo estaba de tal modo construída que podía abrirse y cerrarse a voluntad del operador, estaba allí en la época del accidente, tuvo que ser dejada abierta por los empleados de la demandada cuando la maquinaria fué puesta en movimiento, o de lo contrario el accidente no podría haber ocurrido. *Se resolvió:* que los empleados de la demandada fueron culpables de negligencia al poner en movimiento la máquina sin cerrar la cubierta que estaba abierta y sin cerciorarse de si el demandante estaba o no muy cerca de las ruedas dentadas así expuestas, donde ellos tenían buenas razones para suponer que él se encontraría.

Id. — Id. — Id. — Conducta de los Niños — Negligencia de los Padres.—Aunque la conclusión de la corte sentenciadora con respecto a la negligencia contributoria pudiera dejarse en pie si el demandante hubiera sido un adulto, no hay una base satisfactoria para fundamentar tal conclusión a la luz de la regla a que se hace referencia como la norma para medir la conducta de

los niños, y la doctrina que imputa a los niños la negligencia de los padres en una acción establecida para beneficio del niño, no se recomienda al espíritu de justicia de la Corte Suprema.

Los hechos están expresados en la opinión.

Abogados de la apelante: *Sres. T. Castillo* y *F. B. Fornaris*.

Abogado de la apelada: *Sr. J. Tous Soto*.

EL JUEZ ASOCIADO SR. HUTCHISON, emitió la opinión del tribunal.

Felícita Rivera estableció demanda en representación de su hijo menor de edad, Rafael Rivera, por daños y perjuicios y alegó, entre otros particulares, que la demandada era dueña y poseía en cierta esquina de la Plaza Degetau, de la ciudad de Ponce, un establecimiento abierto al público, o sea, una farmacia y otras industrias, entre ellas la manufactura y venta de helados y refrescos, para cuya confección la demandada utilizaba un motor movido por fuerza eléctrica, el cual a la vez movía una máquina para triturar hielo y cuajar sorbeteras de helado, estando dicho motor situado dentro de dicho establecimiento y en un departamento contiguo al sitio donde se despachaban dichos helados; que la madre estuvo empleada como conserje de dicho establecimiento y que como consecuencia de ello y con el tácito consentimiento de la demandada utilizaba los servicios del menor Rafael dentro de dicho establecimiento; que en cierta ocasión y por la sola culpa y negligencia de la demandada o sus agentes, y mientras se acercaba al motor eléctrico arriba descrito, el niño, sin que mediara culpa o negligencia de su parte, fué cogido por el bombacho de la camisilla que usaba y herido seriamente.

En la demanda también se alega que la demandada utilizaba los servicios del niño enviándole a mandados al correo, a concurrir al despacho de refrescos en busca de helados para los empleados arriba en la oficina, en el sitio donde el motor estaba situado, en buscar aserrín, etc., y que

en la fecha del accidente el demandante estaba así empleado. Pero toda vez que la prueba en relación con estos particulares es contradictoria y que la corte inferior declaró probado que el demandante no era un empleado de la demandada, podemos, para los fines de esta opinión, dejar a un lado este aspecto del caso.

La alegación quinta de la demanda es como sigue:

"5.—Que dicho accidente y todas sus consecuencias se debió única y exclusivamente que a la negligencia, culpa y descuído de la demandada, The Porto Rico Drug Company, sus agentes, empleados o subalternos, consistente dicha negligencia, descuído y culpa, entre otras cosas en:

" '(a) En que dicho motor eléctrico no estaba protegido, ni tenía resguardo, valla, verja, ni ningún aparato que impidiera causar daño a cualquier persona que pasase cerca donde el mismo se encontraba.

" '(b) En que dicho motor estaba situado en el establecimiento de la demandada en un sitio de por sí reducido y con gran exposición a lesionar o atrapar a cualquier persona que por allí pasara.

" '(c) En que no obstante concurrir las circunstancias antes expresadas en relación al motor de referencia, sobre el mismo no había ninguna vigilancia por ninguna persona que impidiera o evitara el tránsito cerca del mismo, ni tampoco había ningún cartel o rótulo que advirtiera el peligro allí existente en relación a dicho motor.' "

La teoría como explican los demandados, el accidente, según revela la contestación, puede verse en el siguiente párrafo:

"Aceptamos que ocurrió el accidente a que se refiere la alegación cuarta por culpa exclusiva de Rafael Rivera y de Felícita Rivera ésta por permitir a dicho Rafael Rivera introducirse en el local donde se fabrican helados, en contra de la prohibición expresa de la corporación demandada y aquél por introducirse en dicho local, en donde se le había prohibido la entrada así a él como a toda persona no empleada en el mismo, y por haber tratado de coger un trozo de hielo de la sorbetera mientras estaba funcio-

nando, sin tomar precaución alguna, pegándose al aparato motriz y dando lugar a ser cogido por el mismo.''

De la opinión emitida por el juez sentenciador hacemos la siguiente cita:

''De la prueba testifical y de la inspección ocular practicada, la corte encuentra probados los siguientes hechos:

''1.—Que en condiciones ordinarias, esto es, funcionando las heladeras, el volumen de éstas impide de manera eficaz que el cuerpo de una persona, que se acerque a ellas, se ponga en contacto con el engranaje.

''2.—Que el engranaje aun sin las heladeras no puede ponerse en contacto con el cuerpo de una persona del tamaño del demandante, a no ser que ésta se suba a la plataforma sobre la que están montadas.

''3.—Que existe un letrero en la puerta que da acceso al departamento al detall y que dice 'Privado.'

''4.—Que existe espacio suficiente para pasar por el departamento de helados sin correr peligro de ser atrapado por las máquinas.

''5.—Que los piñones giran a velocidad moderada.

''6.—Que el engranaje tiene guardas que lo encierran impidiendo todo contacto con el mismo a voluntad de los operadores.

''7.—Que el tránsito por el departamento de maquinarias no es necesario para otras personas que no sean los operarios de ese departamento.

''8.—Que el demandante no era empleado de ninguna clase de la demandada.

''9.—Que no tenía necesidad ni derecho de estar en el departamento de fabricación de helados y su entrada en el local había sido expresamente prohibida por los empleados de la demandada y fué un transgresor.

''Y visto el caso de Morales v. Central Machete, 9 D. P. R. 130, que dice:

'' 'Toda persona que, sin derecho alguno, se introduzca en la propiedad o establecimiento de otra, es un transgresor, (*trespasser*), y lo hace a su propio riesgo, y si sufriera algunas lesiones por el funcionamiento de máquinas, etc., no tiene derecho a reclamar indemnización, a no ser que tales lesiones le hubieren sido ocasionadas voluntariamente y con aviesa intención.'

"Por lo que la corte es de opinión que la demandada no es culpable de ninguna negligencia y que el accidente ocurrió debido a la única y exclusiva negligencia del demandante."

El alegato de la parte apelada concluye con el siguiente párrafo:

"El niño Rafael Rivera era un *trespasser*: a lo sumo un *licensee,* si se admite la alegación de la demanda, 20 R. C. L. sec. 53, página 57.

"Circunstancias en este caso de ser el lesionado un niño.

"El peligro era evidente aun para un niño.

"20 R. C. L. Sec. 82, página 93.

"La negligencia de la madre le es imputable.

"20 R. C. L. Sec. 128, página 153.

"La misma regla existe en California:

52 Cal. 602.   66 Cal. 230.   64 Cal. 463.   118 Cal. 62.

"El niño, aceptando que fuera un empleado, actuó en desobediencia a órdenes expresas.  El efecto es impedirle recobrar.

"18 R. C. L. 152.

"En todo caso el accidente no se debió a defectos en la maquinaria o a negligencia del patrono de no suministrar protección a los empleados, sino a negligencia de otros empleados.  Regla del *follow-servant.*

"18 R. C. L. 193, página 712.

"Atracción para el niño por razón del sitio:

"Puede decirse que Rafael ignorara el peligro y fuera atraído al sitio por la apariencia inofensiva de los aparatos.  ¿De otro modo la teoría del *turn-table* es aplicable al caso?  Las reiteradas manifestaciones de Rafael de que los aparatos producían el ruído de una machina (caballitos) parecen indicar que se ha intentado llevar el caso por este camino, pero debe advertirse:

"Primero: Que Rafael expone que fué a buscar aserrín y pasaba con el aserrín por el sitio cuando el accidente.  No fué, pues, la atracción del sitio lo que lo llevó allí.

"Segundo: Que se paró a ver el trabajo de los operarios cuando los aparatos no estaban funcionando y no podían producir por tanto ruído de machina.

"Tercero: Que su declaración demostró que él sabía perfectamente que allí se picaba hielo y se fabricaban helados y que aquello no era ni podía ser una machina.

"En resumen: No se ha establecido la relación de patrono y empleado. No se ha probado la negligencia de la demandada: se ha probado la negligencia del niño y de su señora madre."

En el caso de *Morales* v. *Central Machete* el demandante era un adulto que estableció una acción de acuerdo con la Ley de responsabilidad de patronos de marzo 1°., 1902 y, por consiguiente, para poder recobrar daños era necesario probar, entre otras cosas, que él era un empleado de la demandada. En relación con estas circunstancias esta corte expresaba lo siguiente:

"Las pruebas, consideradas en conjunto, no demuestran satisfactoriamente que el demandante estaba en el servicio de la parte demandada. Más bien demuestra que era un intruso en la Central Machete, o un violador de dicha propiedad; y que su presencia en la misma era ignorada por las autoridades de dicha compañía."

Además, en el presente caso, como se sugiere en la cita del alegato de la apelada, *supra*, la máquina no estaba en movimiento al acercarse el niño a ella, sino que el demandante fué cogido al echarse a andar el motor por los empleados de la demandada; y aun en el caso de un transgresor adulto, hay una diferencia importante que ha de establecerse entre una mera omisión pasiva o falta en ejercitar debido cuidado y alguna medida activa positiva como causa inmediata del daño.

Así en el caso de *Rome Furnace Co.* v. *Patterson*, 120 Ga. 521, la corte, después de indicar que Patterson era un transgresor, se expresó como sigue:

"Es evidente, por tanto, que el demandado no tenía ninguna obligación para con el demandante en lo que concernía a la condición del sitio cuando penetró en él. El asumió todo el riesgo que pudo haber al entrar en la casa, tanto en cuanto a su condición como en lo que respecta a la forma en que llevaba a cabo allí el trabajo el demandado. Creemos, sin embargo, que aun siendo un transgresor él tendría el derecho a recobrar por cualesquiera

daños que hubiera sufrido como consecuencia de haber el deman-
dado puesto en movimiento negligente y descuidadamente cualquier
agente o fuerza destructora cuya tendencia natural sería poner en
peligro su vida, si al tiempo de tal acto negligente y descuidado
el demandado sabía, o debió haber sabido, que él estaba donde fá-
cilmente podía causarse daño.''

En el caso de *Felton* v. *Aubrey*, 74 Fed. 350, la Corte
de Circuito de Apelaciones, Sexto Circuito, hablando por
conducto del juez señor Lurton, dijo lo siguiente:

''Creemos que muchos de los casos americanos que hemos ci-
tado dejan de establecer la verdadera distinción que hay entre la
responsabilidad del dueño de una propiedad para con las personas
que sufren daños como consecuencia de la mera condición del sitio
y aquellos que llegan a encontrar un peligro debido a la subsi-
guiente conducta del que da el permiso, lo que es incompatible con
la seguridad de las personas a las cuales se permitió ir a su pro-
piedad, y a quienes él estaba obligado a pensar por anticipado que
podrían hacer uso de su permiso. En esta distinción parece in-
sistirse fuertemente en el caso de Corby v. Hill, y es una que no
debe pasar desapercibida. Si hubiere alguna diferencia substancial
entre la consecuencia legal de permitir que otro use la propiedad
de uno, y el atraerle o inducirle a tal uso, la distinción descansa
en la diferencia que existe entre la conducta activa y la mera-
mente pasiva de tal propietario. Puede que sea enteramente com-
patible con las sanas costumbres y debida consideración a los de-
rechos de los demás que al dueño de propiedades no debe hacérsele
responsable para con una persona que va al sitio de otra para usos
propios y sufre algún perjuicio debido a la mala condición del lu-
gar para tales usos, que no ha sido originado subsiguientemente
por la intervención activa del dueño. Si tal persona va allí por
mera tolerancia o simple permiso, parece razonable que él deba
elegir el medio de hacerlo y acepte el permiso sujeto a los riesgos
correspondientes a tal situación. Pero, por otra parte, si teniendo
conocimiento de que tal persona hará uso del permiso, el dueño ac-
tivamente varía la condición haciendo un hoyo o abriendo una
zanja u obstruyendo peligrosamente el lugar que tiene razón para
creer que podrá ser atravesado por quien tiene el permiso, los bue-
nos principios parecen exigir que debe él dar aviso razonable del
peligro que pueda existir.''

Thomas Aubrey, demandante en el caso que acaba de citarse, era un niño de nueve años de edad, pero no hay nada en la opinión que sugiera ninguna intención de distinguir entre adultos y niños de corta edad al aplicar la doctrina; y en el caso de *Ellsworth* v. *Metheney,* 104 Fed. 119, la misma corte, en una opinión emitida por el juez Day, después de indicar que Metheney "no estaba ocupado en el negocio de su principal al ocurrir el daño, sino que encontró su muerte al mediodía, mientras regresaba de una visita que había hecho por su propio gusto fuera de la parte de la mina en donde estaba empleado," se resolvió que la corte inferior cometió error "al considerar el caso como uno en que se trata del deber que tiene el principal para con el empleado que ha sufrido una lesión en el curso de su obligación." Pero la corte pasó a decir lo siguiente:

"Admitiendo que si bien no estaba ocupado en las obligaciones de su empleo, Metheney no tenía derecho a la protección de un empleado, él era, sin embargo, uno con permiso que usaba la entrada con el consentimiento tácito del principal."

Luego, después de citar con aprobación de la opinión emitida por el juez Lurton en el caso de Felton, la corte dice además lo siguiente:

"Aplicando la doctrina aquí enunciada a los hechos desarrollados en el presente caso, no vemos por qué el dueño de la mina que cambia efectivamente la anterior condición de seguridad colocando un alambre eléctrico que no estaba debidamente aislado para evitar causar daño a los que puedan ponerse en contacto con el mismo, en un sitio en donde él sabe o tiene medios de saber que los trabajadores pueden fácilmente congregarse, no es igualmente responsable con el dueño de propiedades que puede 'cambiar activamente la condición haciendo una zanja o abriendo un hoyo u obstruyendo peligrosamente el lugar que tiene razón para creer que será atravesado por la persona que tiene su permiso.' En este caso, así como en el que presenta el juez Lurton, somos de opinión de que los sanos principios y el justo tratamiento exigen que la

persona que tiene el permiso debe tener conocimiento del nuevo peligro que fácilmente puede encontrar al usar la propiedad.''

En el caso de *Ziehm* v. *Vale,* 120 N. E. 702, la Corte Suprema de Ohio distingue uno anterior y justifica la última decisión en esta forma:

''De acuerdo con los hechos que. aparecen en el caso de Harvey, la regla allí enunciada en el sumario es aplicable a la condición de las propiedades, su construcción o mantenimiento, y nó comprende un caso en que la condición estática de las propiedades resulta peligrosa por el funcionamiento pronto y negligente del dueño.''

Véase también el caso de *Brinilson* v. *Chicago & N. W. R. Co.,* 32 L. R. A., nueva serie, 359, y otros citados en la nota al de *O'Brien* v. *Union Freight R. Co.,* 36 L. R. A. (N. S.) 492.

En el presente caso el demandante tenía nueve años de edad en la fecha del accidente y, para los fines de esta opinión, puede admitirse, sin resolverse, que un niño de esa edad puede técnicamente ser un transgresor; aunque las cortes no están acordes sobre este punto y hay algunas autoridades muy respetables que sostienen un criterio contrario. Véanse los casos de *Lynchburg Tel. Co.* v. *Bokker,* 50 S. E. 148; *Dublin Cotton Oil Co.* v. *Jarrard,* 91 Texas 289, 42 S. W. 959, y. otros citados en la nota al de *Walsh* v. *Pittsburgh Ry. Co.,* 32 L. R. A. (N S) 560.

Admitiendo, además, en pro del argumento solamente, que el demandante en este caso era técnicamente un transgresor, como lo declaró probado el juez sentenciador, sin embargo, no podemos convenir en la aplicación que trata de darse a la rigurosa doctrina enunciada en el caso de *Morales* v. *Central Machete* e invocada por la corte inferior.

El juez Thompson en sus Comentarios a la Ley de Negligencia, tomo I, pág. 938, después de discutir la regla ge-

neral que exime de responsabilidad a los dueños y ocupantes de sitios de peligro para los niños que van a ellos, se expresa en estos términos:

"Una doctrina bajo este epígrafe es que si un niño penetra ilegalmente en las propiedades del demandado y recibe un daño como consecuencia de algo que le sucede mientras penetra de tal modo en dicho sitio, no puede .recobrar daños y perjuicios, a menos que el daño fuera causado por un completo descuido o que se debió a la conducta abiertamente negligente del demandado. Esta cruel y perversa doctrina, indigna de la jurisprudencia civilizada, coloca la propiedad sobre la humanidad, deja enteramente de considerar la corta edad y la flaqueza de entendimiento del niño, y en verdad su imposibilidad de ser un transgresor de acuerdo con la sana teoría legal, y deja sobre él las consecuencias de su transgresión lo. mismo que si fuera un adulto, y exonera a la persona o corporación de cuya propiedad él es un transgresor, de todo grado de obligación hacia él, la cual, en igualdad de circunstancias, no tendría para con un adulto. En uno de estos casos la corte no tuvo reparos en decir: 'La circunstancia de que el transgresor en este caso era un muchacho de diez años de edad no puede afectar a la aplicación · de la regla. Los demandados no tenían para con él mayor obligación que si hubiera sido un adulto. Ellos no están en la obligación de tomar precauciones contra ninguna clase de personas que puedan andar en y por sus vías.' En otro caso donde un muchacho de siete años de edad fué muerto mientras trataba de montar en una máquina elevadora, el juez que emitió la opinión de la corte, haciendo cita de otro caso anterior de la misma corte, no tuvo inconveniente en decir: 'El muchacho se encontraba en un sitio donde no tenía derecho a estar y en el cual tampoco tenía derecho a ninguna protección por parte de los demandados contra su propia transgresión negligente.' Tan severamente ·ha sido aplicada esta doctrina que se ha resuelto que un niño no puede recobrar daños y perjuicios por un daño que fué la consecuencia directa de· su propia transgresión, aunque ésta fuera realizada estando bajo el control o dominio de su padre o tutor. Otra corte, con cierta humanidad, ha restringido esa doctrina diciendo que excepto cuando se ve a un niño a tiempo de modo que puede apercibírsele del daño, las personas que legalmente usan o llevan a cabo un negocio en sus mismos establecimientos no son responsables por los daños oca-

sionados a los niños, a menos que bajo las mismas circunstancias hubieran sido responsables para con los adultos que igualmente estaban exentos de culpa.

"Esta severa doctrina se aplica de tal modo que permite a un propietario dejar su propiedad expuesta a los niños de la vecindad, objetos peligrosos de tal naturaleza que atraen la atención de sus instintos infantiles, y eludir la responsabilidad si a un niño que ha sido atraído por tal objeto se le ocasiona la muerte o sufre algún perjuicio por ello, por el fundamento de que el niño es un transgresor y que el dejar objetos peligrosos así expuestos que le lleven a encontrar su muerte no constituye abierta o inexcusable negligencia. De acuerdo con esta doctrina draconiana la edad de un infractor y transgresor, aun cuando actuara como razonablemente podría esperarse de él, si su conducta contribuye al daño que recibe, no impedirá su negligencia contributoria constituir una defensa en favor de una persona o corporación cuya negligencia también contribuyó al daño. Aplicando esta doctrina, se resolvió que una compañía de carros eléctricos no es responsable por el daño causado debido al uso de un freno suelto, a un niño de diez años de edad, quien al recibir el daño se encontraba jugando con otros niños en los carros que estuvieron sin ser vigilados por varios días en una calle pública de la ciudad. Una corte ha ido todavía más lejos y, hablando por conducto de un juez que luego abandonó su toga para convertirse en síndico de una compañía de ferrocarriles insolvente, declaró en lenguaje ilimitado, en una acción establecida por un padre como pariente más cercano de su hijo de siete años de edad, la infame proposición de que cuando un niño es un transgresor en el tren de una compañía de ferrocarriles, tenga o no el consentimiento de su padre, 'la compañía demandada no tiene ningún deber ni es responsable por el daño que le causa.' Además, parece que la ley tiene tanto en cuenta los derechos de los contratistas, que declara que ellos no tienen ninguna obligación—tal es la forma en que se expresa la corte—de emplear hombres para que los niños no juegen en los carros. Otra corte, con una percepción más clara de justicia, sostiene que una compañía de ferrocarriles está obligada a emplear razonable cuidado para prever o impedir que se ocasione un daño a un niño de tan tierna edad que tiene poca o ninguna discreción, aunque el niño sea un transgresor. Otra corte, que generalmente es conservadora de los derechos de la propiedad, refiriéndose también a una compañía de ferrocarriles, sos-

tiene que si bien la poca edad no puede imponer un deber cuando no existía ninguno, sin embargo, *cuando el deber existe* el grado de cuidado que se requiere hacia los niños puede ser diferente del que se exige con respecto a los adultos. Pero el desamparo de la infancia *puede y debe hacer* surgir una obligación cuando ninguna existiría tratándose de adultos. De conformidad con· esto, se ha resuelto que el conductor de un tren en el cual un niño de siete años de edad ha sido un transgresor, está obligado a emplear mayor cuidado tratándose de ese niño que el que tiene que tener con personas mayores. Es bueno saber que esta regla contra los transgresores infantiles no se extiende a las excavaciones dejadas sin protección en los *caminos públicos*. Allí ellos no son transgresores; pero la ciudad tiene para con ellos el deber de saber que ellos han de acudir a tal sitio, y la obligación de protegerlos a fin de que no puedan caerse en ellas.''

Pero, es justo agregar, que ·el mismo autor luego está conforme, en la página 962 del mismo tomo, en esto:

''Si no nos fijamos tanto a lo que los jueces *dicen* como a lo que en efecto sostienen, veremos que en algunos de los casos en que sus expresiones parecen odiosas a la justicia, el daño que sobrevino al niño transgresor se determinaba correctamente—no por su negligencia cuando tenía tan poca edad que era incapaz de ejercitar negligencia, ni a la negligencia de su padre, guardián o tutor, por la cual no debe responder—sino al *accidente* o *desgracia* que se debe a su infantil inexperiencia y desamparo. Así que en un caso en el cual la opinión contiene expresiones que son indignas de una corte de justicia, sucedió que un niño de 6 o 7 años de edad se subió a una bola unida a una cadena que se usaba como aparato elevador para un molino, mientras estaba en movimiento, con el fin expreso de correr en él, no obstante habérsele dicho por un compañero que no lo hiciera, y corrió hasta una altura de tres pisos cuando, asustado, perdió el seguro y cayó a tierra ocasionándose la muerte. Aquí no parece haber sido una conclusión injusta decir que la causa próxima del daño que sobrevino al muchacho fué su propia falta de niño y no ninguna negligencia por parte de aquellos al cuidado de la máquina; pero no es posible convenir en la declaración de la doctrina contenida en la opinión respecto· a que ellos no tenían más deber hacia él que el que hubieran tenido con

un adulto, y que no tenían en absoluto deber alguno porque era un transgresor.''

· Quizá el juez hubiera encontrado más apoyo en el caso de *Walsh* v. *Pittsburgh Ry. Co., supra,* en el cual la Corte Suprema de Pennsylvania, por la autoridad de un caso anterior, sostiene que ''aun los transgresores tienen derecho a la consideración humana'' y dice que:

''Si la persona que echó a andar el motor sabía entonces que el demandante estaba parado entre los rieles, cerca del alambre descubierto, el cual tocaría el traje de ella al estar en movimiento, y de acuerdo con el conocimiento de las circunstancias sabía que ella estaría expuesta a peligro si la máquina se ponía en movimiento, surgió el deber de tener cuidado, como surge en el caso de un maquinista que ve a un niño en la vía frente a su máquina.''

Y en el Suplemento de White, en la página 170, encontramos la siguiente declaración algo más optimista:

''La mejor regla—y la que ha sido más vigorosamente sostenida por las autoridades—no considera a un niño de pocos años, que ha sido atraído a las propiedades por existir en ellas ·algo que incite sus instintos y curiosidad de niño, como un transgresor. La ley considera la existencia de tal objeto o condición como un llamamiento tácito para que el niño entre en el sitio. 'Lo que sería una invitación expresa para un adulto, la tentación de algo que lo atrae al juego lo es también para un niño de corta edad.' De acuerdo con esta regla una persona que tiene en su propiedad un aparato peligroso, aunque en sí no es atractivo, pero que está colocado tan cerca de un punto atractivo en la propiedad que con él constituye una condición peligrosa, puede ser responsable por los daños ocasionados a un niño por el mismo, a pesar de que la condición atractiva no sea peligrosa en sí. Si la propiedad en un caso determinado es suficientemente atractiva para inducir al niño al peligro y sugerir al dueño la posibilidad de un accidente, son cuestiones de hecho para la consideración del jurado.''

En el caso de *Heller* v. *N. Y., New Haven & Hartford R. R. Co.,* 265 Federal 192, el párrafo tercero del sumario expresa lo siguiente:

"Una compañía de ferrocarriles que tenía colocado un alambre con corriente a lo largo de su vía, a 29 pulgadas de una colindancia, por donde pasaba por debajo de un puente en la carretera de 22 pies sobre la vía, se resolvió que no podía imputársele negligencia que la hiciera responsable por la muerte de un muchacho de diez años de edad que subió por la colindancia, y a través de una abertura en la ventana alambrada que había sobre ella, tocó el alambre con una lata de estaño; no habiendo fundamento razonable para prever que él procedería así."

Pero en la página 198 la corte de circuito se expresa así:

"Si el demandado debió razonablemente haber previsto que fácilmente los niños acudirían a este sitio en particular para jugar, y que si ellos acudían, podrían fácilmente ser perjudicados, era culpable de negligencia por conservar el sitio en esa condición de peligro. Es suficiente para poderse recobrar daños y perjuicios en casos como éste, si resulta que las medidas de precaución de naturaleza razonable hubieran impedido el daño alegado y que tales medidas no fueron tomadas por el demandado."

Y en el caso de *Louisville and N. R. Co.* v. *Steele*, L. R. A. 1918 D. pág. 317, una corte de apelación de Kentucky resolvió, citándose del sumario, lo siguiente:

"Una compañía de ferrocarriles cuyo conductor por mucho tiempo ha permitido a los muchachos dar carreras en un tren del cual estaba encargado, está obligado a saber por anticipado que ellos procederían así, y debe ejercitar cuidado ordinario en vigilarlos y protegerlos contra daños."

Y en el caso de *Ziehm* v. *Vale, supra,* el demandado era el dueño y conductor de un automóvil. La opinión dice en parte lo siguiente:

"En el presente caso la cuestión de atracción o permiso no está envuelta, pues se admite que el niño estaba en el carro en contra de la orden expresa del demandado. Según aparece del primero y segundo avisos especiales, el demandado creyó que él no era responsable a menos que él realmente supiera que el niño estaba en el pasadizo del carro al echarlo a andar, o mientras lo movía hacia adelante. El segundo aviso se basaba en el principio alegado

de que después de separar al niño del carro ya no tenía el deman-
dado que cumplir con ningún otro deber, ni ninguna obligación
de ver si el niño permanecía allí.   *   *   *

"Pero al aceptar él que retiró al niño, primero del pasadizo de
la derecha, y luego del de la izquierda de su carro, ¿no serán estas y
otras circunstancias aviso para el demandado de que un niño de esa
edad, que procede por el instinto propio de su edad, y que desco-
noce el peligro, todavía volvería a tratar de subir al carro? Esto
fué realmente lo que ocurrió. La corte sentenciadora no cometió,
por tanto, ningún error al instruir al jurado sobre el punto rela-
tivo a usar el demandado cuidado ordinario de acuerdo con los
hechos revelados."

De una nota sobre la llamada doctrina del peligro atra-
yente, en 19 L. R .A. (N. S.), que empieza en la página 1130,
tomamos los siguientes párrafos:

"Los dueños de terrenos pueden ser responsables por los daños
que causen a los niños transgresores cuando, debido a la natura-
leza peculiar o condición expuesta del defecto u objeto peligroso,
el dueño debió razonablemente haber previsto tal daño; y lo mismo
cuando la demanda alegaba que un puente colgante de un río, si-
tuado en un distrito populoso de una ciudad, era muy atrayente
y llamativo para los niños, y peligroso para ellos reunirse a su al-
rededor mientras se abría y cerraba, y que, por tanto, la deman-
dada estaba en el deber, mientras se movía y giraba el puente,
de tener avisos y vigilancia razonables en sus alrededores, y usar
precauciones razonables para impedir que los niños se acercasen
y causasen daños; se resolvió que la cuestión debió dejarse al ju-
rado de si el puente colgante era una construcción peligrosa en
la cual la demandada debía razonablemente haber previsto que un
niño podía cogerse su pie mientras trataba de saltar a él, y si los
empleados de la demandada a cargo del puente ejercitaron cuidado
ordinario y razonable y tomaron precauciones para impedir que ocu-
rriera el daño. Coppner v. Pensylvania Co., 12 Ill., App. 600.
"El dueño de ruedas engranadas giratorias que no están protegi-
das y que han sido colocadas en un espacio abierto a 20 pies de una
calle, es responsable por el daño que le cause dicha maquinaria a un
niño de tres años de edad, y el hecho de que dicho niño fuera un
transgresor nada tiene que ver. Whirley v. Whiteman, 1 Head,
610. La corte dijo que, al jugar alrededor de dichas ruedas den-

tadas, el muchacho no hacía otra cosa sino ejercitar los instintos naturales de un niño.

"En el caso de Hydraulic Works v. Orr, 83 Pa. 332, una plataforma pesada construída de tal modo que podía subirse o bajarse a través de un camino privado y estrecho en el centro de una ciudad, muy cerca de un camino público, cuya entrada a dicho sitio frecuentemente se quedaba abierta, se resolvió que constituía un aparato peligroso cuando se subía y soltaba y se le hacía inclinar contra un edificio formando tal ángulo que una pequeña sacudida o halón lo haría caer, y el dueño del sitio era, por tanto, responsable por la muerte de un niño de seis años de edad que con otros se encontraba perdido en el pasadizo a través de una puerta de golpe que se había dejado abierta, y que jugaba allí cuando la plataforma cayó sobre él. La decisión descansa en la teoría de que el dueño del sitio pudo fácilmente haber previsto tal accidente. En este caso la corte sentenciadora, accediendo a una petición para que se dieran instrucciones, expresó que no podía considerarse a un niño como un transgresor o infractor.

"Una buena causa de acción por daños causados a un niño se resolvió que era la contenida en una demanda en la cual se alegaba que el demandado funcionaba un molino aplanador sin protección, situado en un solar sin cerca donde se permitía ir a los niños, con el conocimiento y consentimiento del demandado, a reunirse y jugar, estando dicho sitio contiguo a ciertas calles y caminos en medio de un distrito de una ciudad densamente habitada, y donde había maquinaria peligrosa, entre ella ruedas dentadas de naturaleza tal que atraían a los niños y llamaban la curiosidad de éstos, con conocimiento del demandado, y que alegaba que un niño de nueve años de edad que había sido atraído hacia la maquinaria peligrosa por su curiosidad infantil, recibió por ello un daño mientras ejercitaba debido cuidado y precaución por su propio instinto de conservación. Jensen v. Wetherell, 79 Ill. App. 33.

"En el caso de Dublin Cotton Oil Co. v. Jarrard (Tex. Civ. App.) 40 S. W. 531, una muchacha se pilló un pie en una máquina de un molino de algodón sufriendo una lesión. Se alegó que si ella estaba allí meramente con el conocimiento y consentimiento de la demandada, la única obligación que había para con ella era el abstenerse de realizar actos con conocimiento, cuyas consecuencias serían perjudiciales para ella; y que si ella se encontraba allí no por haber sido atraída implícita o expresamente, ni por el per-

miso o consentimiento del dueño, entonces ella era una transgresora y nada podría recobrar por daños y perjuicios que no le fueran ocasionados a sabiendas y voluntariamente. Pero la corte dijo que aunque esta proposición podría alegarse en contra de un adulto de experiencia y buen juicio, no era la ley que regulaba nuestras obligaciones para con los niños pequeños quienes, como las abejas y las mariposas, iban por todas partes y a cada sitio abierto, según les guiaban sus impulsos e instintos infantiles. Ellos no eran transgresores o usurpadores dentro del significado de la ley mientras no tuvieran edad bastante e inteligencia suficiente para saber y apreciar el derecho que tiene el propietario a quitarlos de su propiedad mediante una simple orden. Ellos entendían que únicamente tenían que quedarse afuera cuando no podían entrar. Ellos no se detenían a leer los letreros o avisos, o a investigar si eran bien recibidos.

"Una corporación que tiene sobre una columna de agua un eje giratorio con un cepillo aplanador que contiene un juego de tornillos proyectores, cuyo eje está sostenido por una armadura de madera la cual, junto con la maquinaria y sus alrededores, es atractiva para los niños que tienen por costumbre acudir a ese sitio con el fin de distraerse, estando acostumbrados los hombres y los muchachos a subirse sobre las maderas con el fin de pescar, con el consentimiento de la compañía, se resolvió que era responsable por la muerte de un niño de catorce años que al subirse sobre la construcción fué cogido por el juego de tornillos y arrollado por el eje. Biggs v. Consolidated Barb-Wire Co., 60 Kan. 223, 44 L. R. A. 655, 56 Pac. 4. En el mismo sentido se pronuncia el caso de Biggs v. Consolidated Barb-Wire Co., 62 Kan. 492, 63 Pac. 740.

"Si en determinado caso ha habido o no negligencia por parte del dueño de una propiedad por tener en ella una maquinaria peligrosa, es una cuestión de hecho, que depende de la situación de la propiedad y de las circunstancias concurrentes; porque de tales hechos habrá de depender el grado de cuidado necesario para proteger a otros contra cualquier daño proveniente de la misma. Barrett v. Southern P. Co., 91 Cal. 296, 25 Am. St. Rept. 186, 27 Pac. 666."

Y en otra nota que aparece en L. R. A. 1917 F. en la página 67, encontramos lo siguiente:

"Sobre la cuestión de la negligencia contributoria de niños entre las edades de nueve y trece años, inclusive, el conflicto principal en los casos está en cuanto a la cuestión de la presunción de capacidad o incapacidad. Como ya se ha indicado, se ha resuelto en algunos estados que tal presunción existe hasta que el niño llega a la edad de catorce años. Así, pues, la doctrina de presunción *prima facie* de incapacidad por parte de un niño para que contribuya negligentemente a que se le cause un daño, ha sido reconocida en Pennsylvania en casos de daños a niños de nueve, once, doce y trece años de edad. Y la misma doctrina ha sido reconocida en Mississippi en el caso de un daño ocasionado a un niño de diez o doce años de edad. Sobre este punto, en una acción con motivo de la muerte de un niño de trece años, ocasionada mientras estaba empleado en una mina del demandado, la corte, en un caso de Alabama, al resolver que la cuestión de negligencia contributoria había quedado propiamente sometida al jurado, dijo lo siguiente: 'Puede que sea cierto que la negligencia contributoria en ciertas condiciones pueda imputarse a un menor de catorce años de edad como cuestión legal, así como cuando la prueba de su cuidado y prudencia y su capacidad para ejercitar juicio y discreción no está en conflicto, y no pueden establecerse de ella diferentes inferencias. El hecho, sin embargo, de haberse demostrado que el menor era 'inteligente, listo y laborioso,' sin otra cosa, no es suficiente para destruir la presunción de aquella falta de discreción que *prima facie* lleva consigo su edad, pues un menor puede ser todo esto y sin embargo carecer de juicio y discreción que le haga ser imprudente y temerario.'

"En la mayoría de las jurisdicciones, sin embargo, la doctrina de la presunción *prima facie* de que los niños de 9 a 13 años de edad son incapaces de negligencia contributoria, no parece aplicarse, pero a tales niños se les exige que ejerciten un cuidado proporcional a su capacidad, discreción, conocimiento y experiencia, y si existe alguna presunción en el asunto es que ellos pueden ejercitar algún grado de cuidado."

La norma de la prueba de la conducta de un niño al resolver la cuestión de negligencia contributoria es la contenida en el caso de *Rivera* v. *Sucesores de López Villamil*, 29 D. P. R. 275, y no es necesario que se reproduzca ahora.

"La doctrina del caso de Hartfield v. Roper, que imputa negli-

gencia a los padres o tutores de niños, prevalece todavía en toda su fuerza en New York, estado de su adopción, y se observa en North Carolina. La doctrina originalmente aceptada en Indiana se rechaza ahora por las cortes de ese estado.

"La doctrina que imputa negligencia en relación con esto, ha sido negada en decisiones recientes de Connecticut, Illinois, Indiana, Iowa, Kentucky, Minnesota, New Hampshire, New Jersey, Ohio, Oregón, Tennessee, Texas y Vermont. En Connecticut, se resuelve que la cuestión de la negligencia de los padres de un niño al permitirle jugar en las calles es inmaterial, cuando no resulta que los padres están en condiciones de beneficiarse participando en la distribución de la suma que trata de recobrarse en una acción establecida por el administrador por la muerte injustificada de un niño." White's Supplement to Thompson's Commentaries on the Law of Negligence, secs. 292 y 293.

Véase también el caso de *Sandel* v. *State*, 13 Am. Law Rep. 1268, pág. 1271, en donde se establece una diferencia en cuanto a esto entre una acción seguida para beneficio de un menor y una por el daño o muerte de un menor, iniciada para beneficio de los padres.

En el presente caso el día del accidente uno de los empleados de la demandada, al partir un bloque de hielo, dejó caer un partidor de hielo, que pasó a través del tubo o receptáculo de la trituradora de hielo en la máquina que estaba debajo. Poco después otros dos empleados estaban reparando la avería y el demandante, fuera o no observado, estaba allí mirando. Al terminarse el trabajo uno de los empleados a que acabamos de referirnos puso en movimiento la maquinaria, ocasionándole inmediatamente el daño al demandante.

Si, aparte del trabajo de reparación, la exposición de las ruedas dentadas y su proximidad a la fuente de soda y a la calle, el aspecto atractivo de su movimiento era la única base para la teoría de la incitación del instinto natural del niño, entonces podríamos estar dispuestos a considerar más seriamente, aún cuando no estamos inclinados a aceptar, la

contención del abogado del apelado de que no se ha establecido un fundamento muy satisfactorio para la aplicación de la doctrina sobre aparatos atractivos (*turntable doctrine*).

Pero hay otro aspecto que es mucho más importante. Puede ser cierto que los jefes de departamento y aun sus subordinados inmediatos no utilizaran los servicios del demandante ni expresamente autorizaran o consintieran el uso de tales servicios por otros empleados. Sin embargo, hay prueba tendente a acreditar, y de la que estamos persuadidos, considerados todos los particulares, que ciertamente demuestra que al demandante en varias ocasiones, por lo menos, se le permitió, si no se le indujo, por un ayudante del encargado de las sorbeteras, a que lavara las botellas y otros envases usados en la manufactura de los helados, y que como recompensa de tales servicios se le ofrecía y recibía mantecado u otras confecciones siempre que el producto resultaba salado o con otra mezcla que le hacía inservible para la venta. Aún la prueba de la defensa, que no llega a admitir tanto, no sólo indica una actitud de forzada tolerancia y conformidad en la presencia del demandante alrededor del sitio, sino que revela también que el demandante estaba pendiente de encontrar y apropiarse cualquier residuo que quedara en los envases cuando se suponía que habían sido vaciados, y que tanto él como otros niños repetidas veces habían sido separados del sitio donde el accidente ocurrió. De modo que desde uno u otro punto de vista, y ya se considere al demandante como una persona que ha sido atraída al sitio, uno con permiso o un infractor técnico, el sitio donde estas confituras se preparaban se convirtió para él, y todos sus fines prácticos, en un lugar atrayente; y la demandada sabía y tenía motivos para prever la presencia del demandante en cualquier tiempo.

El accidente ocurrió unos tres años antes de la fecha del juicio y de la inspección ocular del sitio hecha por el juez

sentenciador. Si la caja o cubierta cuya existencia declaró probada el juez sentenciador, quien dijo que estaba construída de tal modo que podía abrirse y cerrarse a voluntad del operador, estaba allí al ocurrir el accidente, entonces debió haberse quedado abierta por los empleados de la demandada al ser puesto el motor en movimiento. De otro modo, el accidente no pudo haber ocurrido. Que los empleados de la demandada fueron culpables de negligencia por echar a andar el motor sin cerrar el engranaje y sin tener en cuenta si el demandante se encontraba o no muy cerca de las ruedas dentadas, donde tenían ellos buenas razones para suponer que el demandante podía encontrarse, es cosa demasiado clara para ser discutida detenidamente.

Sobre la cuestión de negligencia contributoria será bastante con decir que si bien la conclusión en cuanto a este punto podría permitirse que subsistiera si el demandante fuera un adulto, no existe ninguna razón satisfactoria en la que pueda basarse tal conclusión, a la luz de la regla arriba referida como norma para apreciar la conducta de los niños; y la doctrina que imputa a los niños la negligencia de los padres, en una acción establecida para beneficio del niño, no es por sí recomendable a nuestro espíritu de justicia.

Debe revocarse la sentencia apelada.

*Revocada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente del Toro y Asociado Franco Soto.

Los Jueces Asociados Sres. Wolf y Aldrey disintieron.

OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SR. WOLF.

Este fué un caso en el cual la Corte de Distrito de Ponce formuló completas conclusiones de hecho con respecto a las cuestiones litigiosas que le fueron sometidas. Si se examinan las alegaciones se verá que no se levantó en la

demanda o en la contestación ninguna cuestión sobre un supuesto peligro atrayente *vel non.* De igual modo, tampoco fué presentada ninguna cuestión litigiosa acerca del deber en que está el dueño de un sitio de tomar las medidas ordinarias para proteger a un transgresor o persona con permiso (*lisensee*), adulto o niño, una vez que el dueño sabía o tenía razón para saber que tal persona podría encontrarse en el sitio en cualquier momento. Ni tampoco es éste un caso como se resolvió o sugirió en la opinión emitida por esta corte en el caso de *El Pueblo* v. *Valdés,* 31 D. P. R. 223, en el cual la Corte de Apelación podía considerar las alegaciones como enmendadas para ajustarlas a la prueba, o la incongruencia inconsiderable. No encuentro nada en la transcripción de autos que siquiera muestre remotamente que había alguna controversia acerca de algún alegado peligro atrayente, o sobre algún deber consiguiente de protección contra los transgresores o personas con permiso, la presencia de las cuales podría esperarse. Algunas de estas cuestiones las discutiré más adelante, pero ahora me dirijo a la condición de las cuestiones litigiosas y conclusiones relativas a las mismas. La teoría de la demanda, a la cual no se propuso ninguna enmienda, fué que el demandante era un empleado cuyos deberes le obligaban a acudir a un sitio donde había una maquinaria peligrosa que podía causar daño a cualquier persona que pasara por allí y que la demandada negligentemente dejó de tenerla protegida.

Los hechos declarados probados por la corte demuestran que el demandado no era empleado de la demandada; que no tenía necesidad ni derecho de acercarse a la alegada maquinaria peligrosa; que se le había prohibido ir allí; que la maquinaria estaba en un sitio del departamento en el cual el público no tenía para qué ir; que la maquinaria estaba tan bien protegida que no había ninguna probabilidad de que alguien se causara daño al pasar por allí y que la entrada a esta parte del departamento estaba prohibida. La

opinión de la mayoría indicaba que la inspección ocular del sitio hecha por el juez tuvo lugar tres años después del accidente, pero dicha opinión de la mayoría no declara que la corte estuvo equivocada. La prueba sostiene la conclusión de la corte inferior no sólo en este respecto sino en todos los demás; en otras palabras, hubo prueba tendente a demostrar cada uno de los hechos declarados probados por la corte inferior. La corte inferior oyó declarar a los testigos y prevalece la presunción corriente de que las conclusiones son correcta hasta tanto se demuestre claramente lo contrario. Creo que la opinión de la mayoría realmente no considera que las conclusiones no estuvieron justificadas por la prueba, sino que en cierto modo establece otras conclusiones basadas en materias de prueba que quizás no han sido tratadas específicamente por la corte inferior.

Sin embargo, si no había ninguna conclusión especial acerca de alguna de esta alegada prueba que esta corte consideró suficiente para justificar una revocación sin celebrar un nuevo juicio, necesariamente hubo una conclusión general a favor de la demandada. En vista de esta conclusión general la prueba necesariamente favorece a la demandada y no existe absolutamente ninguna razón que yo pueda ver por la cual los testigos del demandante habían de ser preferidos o necesariamente creídos. Cuando existía un conflicto la corte evidentemente creía a los testigos de la demandada. Algunos de los testigos, por tanto, del demandante, cuyas declaraciones no fueron creídas por la corte han de ser rechazados en otros sentidos. Si esto tiene aplicación completa en cuanto a la declaración de la madre y del hijo, demandantes en este caso nominal y real, es cuestión de poca importancia. He leído esta prueba y en vista de las conclusiones de la corte no estoy convencido. Sostengo que debe ser difícil si no prácticamente imposible, revocar un caso basado en la prueba testifical cuando los jueces de la corte de revisión están en desacuerdo sobre la veracidad de los

testigos.   Entonces, a falta de parcialidad, pasión o prejuicio o error manifiesto las conclusiones de la corte inferior establecen los hechos para la corte de apelaciones.   Un juzgador de casos, como es un juez o jurado, no está obligado a dar crédito aun a las declaraciones que no han sido contradichas.   Véase anotación 8 A. L. R. 796 y siguientes.

Es muy posible que la corte sentenciadora no diera crédito a ninguna de las declaraciones que sostienen las teorías por virtud de las cuales fué revocado este caso.   Por ejemplo, quizás la corte pudo haber dejado enteramente de dar crédito a las manifestaciones hechas por los testigos del demandante que tendían a demostrar que a este niño frecuentemente le daban residuos de helado si acaso.   Digo "si acaso" porque la imaginación de un testigo puede multiplicar casos.   Es evidente que aun cuando algunos de los empleados, suponiendo que estuvieran perfectamente autorizados para hacerlo, en ocasiones aisladas, daban al niño demandante refrescos, si estas ocasiones no eran continuas o frecuentes, no había necesariamente ninguna razón para esperar que el niño estuviera en el sitio en un momento determinado como declara la opinión de la mayoría.   La presencia meramente ocasional de los niños en la propiedad de una persona no es suficiente para suponer un conocimiento por parte del dueño de que existe una atracción probable para los niños.   Además, viendo que la corte claramente declaró probado que la presencia del niño estaba prohibida allí y que a este niño y a otros repetidas veces se les advirtió que salieran del sitio, aunque tal aviso podría no ser bastante en ciertos casos, exigiría por lo menos de una corte de revisión el estar convencida de que las visitas de estos niños no eran ocasionales sino frecuentes.   De los hechos debió haber aparecido claramente que los niños podrían llegar en cualquier momento.   Para revocar la sentencia esta corte debe indicar, me parece, por qué el juez sentenciador debió haber dado crédito a la prueba testifical

de los demandantes.  Ciertamente que si lo que estos tes-
tigos declararon no era cierto el derecho de un demandante
con una buena causa de acción a recobrar daños y perjui-
cios no puede afectar a este caso.

El hecho saliente que se observa en las conclusiones de
la corte y los autos es que el niño demandante era un trans-
gresor.  Por supuesto si es de aplicación la teoría de un
peligro atrayente, estoy conforme en que el niño no era un
transgresor, pero estoy enteramente satisfecho de que la
cuestión del peligro atrayente no sólo no fué alegada o le-
vantada sino que es totalmente inaplicable a cualquiera de
los hechos de este caso.  La opinión de la mayoría está
más o menos dispuesta a admitir que fuera de la teoría del
peligro atrayente el demandante sólo podía haber reco-
brado por razón de algún deber superveniente en el dueño
del sitio, de tenerlo protegido contra los transgresores cuya
presencia razonablemente podría esperarse.  Bajo ciertas
circunstancias hasta los niños muy tiernos pueden ser trans-
gresores.  Un niño muy pequeño que sube por una ventana
que está abierta es un transgresor cuya presencia el dueño
generalmente no tiene la obligación de anticipar.  Necesa-
riamente si una persona tiene una ventana baja y una ma-
quinaria peligrosa en poder suyo a la cual han venido los
niños con suficiente frecuencia para prevenirla, el espíritu
corriente de humanidad y la ley según lo concibo le im-
pone el deber de proteger ese sitio.  Sin embargo, toda
clase de cosas en una casa así como estufas, máquinas de
coser, varios aparatos eléctricos incluyendo los abanicos, se-
rían peligrosas para un niño de corta edad.  La mejor opi-
nión que encuentro en cuanto al particular es la de que tra-
tándose de niños que son muy pequeños o que no tienen
gran inteligencia no existe ninguna posibilidad de imputar-
les negligencia contributoria.  *Riggle* v. *Lens*, 71 Ore., 126,
127; 131 Ann. Cases 1916 C. 1083; L. R. A. 1915 A 150,
que aprueban la sentencia del Juez Jeremías Smith de

Mass. La negligencia contributoria según se usa la frase presupone negligencia por parte del demandado, de modo que, como indican las autoridades, para que pueda recobrar un niño de muy corta edad, el deber de proteger debe primero demostrarse. En otras palabras, las autoridades indican de modo· claro que a un niño de corta edad no puede hacérsele responsable por sus transgresiones. Sin embargo, su mera irresponsabilidad no impone ningún deber por parte del dueño de un sitio a menos que el deber exista por otra causa. *Savannah, Florida & Western R. R. Co.* v. *Beavers,* 54 L. R. A. 314, 113 Ga. 398, 29 Cyc. 446, nota 42. Estoy ahora hablando de casos en los cuales no existe ninguna posibilidad para la aplicación de la teoría de un peligro atrayente. Y no estoy considerando la clase muy limitada de casos en los cuales surge un deber superveniente de proteger contra los transgresores. La proposición en la cual estoy insistiendo es que el hecho de que un niño de ciertos años no pueda ser culpable de negligencia contributoria no impone ningún deber al dueño del sitio. La opinión de la corte inferior declaró probado que éste era culpable de negligencia contributoria pero no veo que esta conclusión formara parte esencial de la opinión. Un razonamiento erróneo no constituye fundamento para la revocación. 4 C. J. 662.

Estoy dispuesto a ir tan lejos como cualquier otra persona al restringir a los dueños de maquinaria peligrosa de dar empleo a los niños. *Rivera* v. *Rivas,* 31 D. P. R. 361, 374. Podría, por tanto, tener yo algunas simpatías con la teoría del caso del demandante como ha sido presentado o sea, que era un empleado del dueño. Bajo la condición de la ley como ha sido sentada por los precedentes podría existir cierta duda acerca de si un empleado, adulto, o niño, tendría hasta tanto derecho como un transgresor o persona con permiso. En otras palabras, por malo que pueda ser el emplear a un niño donde se usa maquinaria peligrosa, sin embargo

un empleado, según la ley, asume ciertos riesgos. La opinión de la mayoría—nominalmente a lo menos—admite que el demandante no estaba empleado por el dueño del local, pero ciertas indicaciones hechas en la última parte de la opinión me dejan en duda con respecto a si la opinión de la mayoría no consideró a este niño como un cuasi empleado. Si, como indican las conclusiones de la corte inferior, él no era un empleado, debo considerar que este cuasi empleo no forma verdadera parte de este caso. En todos y en cada caso la corte declaró probado que no era peligroso para nadie andar por donde estaba esta maquinaria. No he podido descubrir nada en la prueba con excepción del hecho de que el muchacho fué realmente cogido por la maquinaria que establezca el hecho de que la maquinaria estaba protegida deficientemente. Antes de que la doctrina de *res ipsa loquitur* se aplique tengo la idea de que es la ley en todas partes que para que un demandante pueda recobrar debe probar que se encontraba en un sitio donde tenía derecho a estar. De una lectura de los autos estoy plenamente convencido de que este accidente no pudo haber ocurrido si este muchacho hubiera mantenido sus pies en el terreno y no para sus propios fines independientes hubiera subido a un sitio más cerca de donde estaba la maquinaria peligrosa. Aunque soy fuertemente de opinión de que ni las alegaciones ni los autos justifican las teorías por virtud de las cuales fué revocado este caso, como tres jueces han firmado su aprobación a la revocación de la sentencia, trataré de examinar la condición de la ley y los hechos en estos particulares.

Si las cuestiones litigiosas como han sido presentadas sólo habían de ser consideradas el apelado, en mi opinión, innecesariamente en su alegato anticipó la posibilidad de que pudiera ser aplicable la teoría de un peligro atrayente y procedió a expresar algunas razones por las cuales esa teoría no podía ser aplicada. Una de ellas fué que el niño

no se encontró en el sitio donde estaba por razón de una maquinaria atrayente. Esto está sostenido por la misma declaración del niño demandante. El manifestó que oyó un ruído y fué a averiguar qué era ese ruído. Si su manifestación fué cierta, lo que dudo, y creo que esta corte duda, él solamente fué atraído por el ruído. Entonces si se hubiera quedado quieto no hubiera sido lesionado. No encuentro ningún caso que sostenga que cuando una persona tiene una maquinaria en su establecimiento aun cuando esté enteramente abierta y sin protección pero que es útil y nenecesaria para su negocio, dicha persona está en el deber de proteger a los niños que no son traídos al sitio debido a la maquinaria sino que pasan por allí con algún otro fin. Véase en contrario el caso de *Briscoe* v. *Henderson Lighting and Power Co.*, 19 L. R. A. (N. S.) 1116. La declaración del muchacho demostraría que él no fué allí debido a la maquinaria atrayente, si su declaración ha de ser creída. Por supuesto, si su declaración no se cree en este sentido, entonces muy poco valor puede dársele a nada que diga. La opinión de la mayoría creía aparentemente, a pesar de lo que dice el muchacho que él fué allí debido a la situación atractiva del sitio. Aun así sostengo que él no fué allí con el objeto de jugar, como es, si no me equivoco, el objeto universal en los casos de peligro atrayente. El fué allí a obtener algo para sí mismo. En Massachusetts una niñita entró a una tienda llevándola de la mano su padre mientras éste hacía algunas compras. Ella se soltó de su mano para comprar refrescos. Cerca de este sitio funcionaba un molino de café y para coger algunos de los granos ella metió la mano y perdió sus dedos. La corte, por conducto del juez señor Oliver Wendell Holmes, ahora miembro de la Corte Suprema de los Estados Unidos, dijo: "La tentación no es siempre una invitación, según se entiende la ley común por las personas más competentes, esto es, no excusa una transgresión porque haya la tentación de realizarla ni hace

que los dueños de propiedad queden obligados a tener en cuenta la infracción de los derechos de propiedad porque hubiera podido preverse la tentación de mentes no educadas, de infringirlos.'' *Holbrook* v. *Aldrich,* 168 Mass. 15. Admitiendo que quizás algunas de las cortes podrían sostener que como el niño era primeramente un invitado como lo son todas las personas que van a una tienda a comprar, que el molino de café era un peligro atrayente y por tanto que el dueño debió haberlo tenido protegido. En otras palabras, cuando existe un peligro atrayente surge un deber de proteger. En el presente caso el niño en manera alguna era un invitado. Como indicó el juez Holmes, bajo la supuesta teoría, él era meramente tentado. En el caso de *Erie R. R.* v. *Hilt,* 247 U. S. 97, el demandante era un muchacho de menos de siete años de edad y había estado jugando bolas cerca del desvío cuando una bola corrió bajo el carro. El muchacho trató de coger la bola con su pie y mientras hacía esto el carro volvió para atrás lesionándole el pie. La corte resolvió por conducto del juez, Sr. Holmes, que el niño no actuó movido por la tentación que le ofrecían los carros sino por el deseo de recoger su bola como en el caso de *Holbrook* v. *Aldrich, supra.*

La teoría de un peligro atrayente o los casos de plataformas giratorias están casi sino universalmente basada en la tendencia de los niños a jugar con cualquiera o todas las cosas que lleguen a su alcance. Según entiendo estos casos, y algunos de ellos con sus aplicaciones se citan en 19 L. R. A. (N. S.) pág. 1094 y siguientes el niño o niños o han sido directamente invitados o inducidos a ir al sitio por algo que es atractivo y debieron haber estado protegidos. En los casos de plataforma giratoria como típicos donde los niños pueden jugar con tales objetos movibles, la Compañía de Ferrocarriles no solamente debe cerrar la plataforma sino ponerle candado. La Compañía de Ferrocarril en este caso está obligada a anticipar que un niño sa-

cará un enganche y procederá a jugar con el disco giratorio.
La mayoría de los casos en los cuales se invoca la doctrina
se funda en la atracción de locales adyacentes a la carre-
tera, donde la atracción del objeto puede tentar a los niños.
No encuentro ningún caso donde se imponga el deber al
dueño de proteger contra maquinaria peligrosa en una parte
distante de su local hasta que la presencia actual de los ni-
ños y la probabilidad de su parte de ser lesionados llamen
de algún modo su atención.   La Porto Rico Drug Co. avisó
a los niños que no entraran en su establecimiento; tomó
medidas para resguardar la propia maquinaria.   Pero no
hay nada que yo encuentre en el caso que demuestre que
cualesquiera de estas medidas se tomaran porque el dueño
temía que la maquinaria fuera atractiva para los niños.
Una o dos entradas por los niños por sí no implica una invi-
tación.   *Wilmot* v. *McPadden Jr. et al.*, 19 L. R. A. (N. S.)
1101; *Kisler's Administrator* v. *Kentucky Distilleries and
Warehouse Co., et al.*, 112 S. W. 913; *McDermott* v. *Burke*,
256 Ill. 401; *Fitzpatrick* v. *Penfield*, 109 Atl. 653.   En este
último caso se resolvió que el dueño de establecimientos
que permite usarlos como sitio de juego por determinado
tiempo podría ser considerado como que ha hecho una
invitación a los niños para entrar a su sitio pero la corte
resolvió que el uso de un solar abierto como lugar de
juego de los niños todos los días por cuatro domingos y
posiblemente una o dos veces más no era lo frecuente o
continuado para conocer al solar como un lugar de juego
de modo que el dueño tenga que ejercer tal cuidado or-
dinario que lo mantenga en condiciones de seguridad para
los niños.   Si debo ir tan lejos como fué la Corte de Penn-
sylvania es otra cuestión pero resulta perfectamente claro
en este caso que el mero hecho de que algunos niños hubie-
ran sido notificados de no entrar en el departamento por
razones que no se revelan claramente no implica una invita-
ción por parte del dueño.

Hay una extensa clase de casos que envuelven estanques, cisternas y otras excavaciones en la que el dueño casi universalmente no está obligado a tenerlos protegidos contra los niños. *Savannah, Florida & Western Railway Co. v. Beavers,* 54 L. R. A. 314. Esta y muchas otras cosas son muy frecuentes en la vida de los agricultores o dueños de las fincas para requerir precaución. Un agricultor puede dejar un vagón en una pendiente en su misma finca sin tener ninguna necesidad de tomar medidas contra la posibilidad de que un niño vecino pueda subir al vagón, ponerlo en movimiento y ser lesionado. *George* v. *Los Angeles Railway Co.,* 126 Cal. 364, *Kaumeier* v. *City Electric R. Co.,* 116 Mich. 312. Hay muchos otros objetos a los cuales se refieren los casos o que pueden ser imaginados, así como hornos, máquinas de coser, abanicos y aparatos eléctricos, y muchas otras cosas que todo el mundo usa que son tan corrientes que la ley no puede imponer una responsabilidad a los dueños de proteger a otras personas. Los casos de plataformas giratorias son todo lo contrario y hay casos intermediarios en los cuales el deber surge o no de acuerdo con las circunstancias. Ahora bien, sostengo, a riesgo de repetir que cualquier maquinaria peligrosa en la parte privada de la propiedad de una persona o establecimiento de un negocio cae dentro de la clase de estanques y pozos hasta que se demuestre primero que los niños han sido indebidamente atraídos por la maquinaria. *Peters* v. *Bowman,* 115 Cal. 356 y otros anteriormente citados. La cuestión de conocimiento desempeña un papel importante.

No encuentro ninguna base suficiente en los autos que demuestre que ya los dueños o cualesquier otros de los empleados de la Porto Rico Drug Co. supieron o tenían motivos para saber que esta maquinaria era un peligro atrayente. *Indianapolis Water Co.* v. *Harold,* 83 N. C. 993; *National Metal Edge Box Co.* v. *Agostini,* 258 Fed. 109, *Heller* v. *New York, N. H. & H. R. Co.,* 17 A. L. R. 823,

829.   Aunque a los niños se les había prohibido aproximarse y a este muchacho se le había dicho que no fuera allí, no existe ninguna prueba que se me haya indicado que demuestre que algún niño fuera jamás atraído al sitio como se emplea la palabra, por esta máquina trituradora de hielo.   En tanto desempeña un papel el conocimiento, y debe ser un elemento para que el caso sea una excepción, tal conocimiento no puede imputarse contra la Porto Rico Drug Company.   El hecho de que la presencia del niño, según la teoría de esta corte, podría esperarse allí para buscar hielo y aserrín o los desperdicios de refrescos o demás, no hace que el caso quede comprendido en la doctrina de los casos de plataforma giratoria.   El deber de proteger contra aquellos transgresores que pueden esperarse es una cuestión distinta.

Con respecto, entonces, al deber superveniente de un dueño de una propiedad de protejer el sitio contra transgresores, repito que no encuentro nada en la prueba que justifique la aplicación de esta teoría.   Examinemos uno de los casos principales citados por la opinión de la mayoría o sea el de *Felton* v. *Aubrey,* 74 Fed. 350.   Este es el caso muy conocido en el cual una compañía de ferrocarriles aun en su misma vía tenía derecho a esperar que llegaran niños o hasta adultos y por tanto se le requería que usara cuidado ordinario para evitar causarles daño.   En otras palabras en este caso existió un deber público o cuasi público. La parte más importante de esta opinión, sin embargo, como en el caso de *Walsh* v. *Pittsburg Railways Co.,* 32 L. R. A. (N. S.) 559 y nota detallada, es el elemento de conocimiento y no solamente existe dicho elemento de la posible presencia de los niños sino también el conocimiento de que adultos o niños puedan ser lesionados por el paso de los trenes.   Encuentro que los autos no demuestran que nadie sabía que un niño a diferencia de un adulto, podía ser lesionado por esta maquinaria.   No existe ninguna prueba fuera del hecho del

propio accidente, que en el curso verdadero de los sucesos algún niño podía ser o sería lesionado, especialmente si tal niño meramente pasaba por el rededor del sitio sin subirse. No me es posible ver cómo es que por el hecho de que uno o varios de los empleados dieran a este niño sobrantes de refrescos o le enviaran a hacer mandados diera a ninguno de ellos motivo para sospechar que el niño sería lesionado por la maquinaria. Exigir de un dueño de un establecimiento aun cuando él supiera que los niños podrían esperarse allí ocasionalmente o hasta frecuentemente, que proteja el sitio contra accidente que nunca han sido conocidos antes, es una teoría que no encuentro en ninguna parte en los casos reportados. Alguna relación causal debe demostrarse que existe entre el incumplimiento del deber y el accidente. *Willis Swartwood's Guardian et al* v. *Louisville & Nashville R. Co.* 19 L. R. A. (N. S.) 1112.

Hay otra cuestión a la cual no se ha hecho referencia en la opinión de la mayoría y esa es la cuestión de mandato. Suponiendo que fuera cierto que estos alegados empleados tenían motivo para sospechar la presencia de un niño porque le habían dado sobrantes de refresco y enviado a hacer mandados, ¿cómo pueden ser imputados estos actos en contra de los dueños sin demostrarse primero que los actos particulares estaban dentro del alcance de los deberes de tales empleados? Los autos no revelan y creo que sería difícil probar que estos actos estaban autorizados o hasta sostenidos por el dueño o dueños de la Porto Rico Drug Co. o por alguno de sus directores o superintendentes. El acto debe estar razonablemente comprendido en el alcance del deber del empleado. *Sweeden* v. *Atkinson Improvement Company,* 27 L. R. A. (N. S.) 124; *Davis* v. *Ohio Valley Banking & Trust Co.,* 15 L. R. A. (N. S.) 402. La opinión de la mayoría expresa que este sitio se convirtió de hecho en una trampa preparada para el niño en este caso. Parece ser una contestación suficiente a cualquier teoría de

"trampa preparada" que antes de que el dueño pueda ser hecho responsable por tal alegada trampa preparada debe hacerse constar que él sabía o tenía motivo para saber que era tal trampa preparada. Una trampa preparada implica malicia o tal negligencia que perturbaría el sentido de la justicia al dejarlo sin protección. Si había tal trampa preparada no creo que se escaparía a la observación de un juez sentenciador. Además de esto, sin embargo, sostengo que cuando un demandante intenta recobrar por la teoría de trampa preparada, su demanda debe revelar y la prueba justificar que él procedía basado en esa teoría, que notificó enteramente a la demandada antes de terminarse el juicio que una trampa preparada era la teoría de su caso. Esto me trae al punto más importante de este caso.

He indicado antes que las alegaciones no justifican la revocación de esta sentencia. El juez Thompson, en su obra sobre Negligencia critica a las cortes que consideran a un niño como un transgresor cuando había un peligro atrayente y no creo que yo estaría en desacuerdo con él cuando existe un peligro atrayente. El juez Thompson, sin embargo, estoy seguro, no seguiría a esta corte en su omisión en observar la necesidad de una alegación suficiente en la demanda. En el artículo 7582, Suplemento de su Obra, dice: "La demanda en una acción por lesiones a un niño que jugaba al rededor de una maquinaria debe alegar o que hubo una invitación real para los niños a jugar alrededor de la maquinaria o que era tan particular y singularmente atractivo para los niños que constituía una invitación implícita. El cita el caso de *Driscoll* v. *Clark,* 32 Mont. 172, caso muy interesante y *in pari materia;* son también aplicables los casos de *Fusselman* v. *Yellowstone Valley, Land & Irrigation Co.,* 163 Pac. 475; *San Antonio & Aransas Pass Ry. Co.* v. *Morgan,* 92 Tex. 98. Véase también 29 Cyc. 567.

El caso de *Lee* v. *Kirby,* 217 S. W. 895, resume la ley muy bien al resolver que es un precepto correcto y bien sen-

tado de la ley de negligencia que cuando un demandante alega en su petición los elementos de negligencia de que se queja no puede recobrar basado en ningún elemento de negligencia que no haya especificado. La corte, en ese caso, llama la atención muy sabiamente a que una de las razones es que a un demandante no debe permitírsele recobrar por algo de que no se queja y de lo cual no ha hecho al demandado ninguna notificación.

Una demanda ordinariamente es suficiente si alega negligencia en términos generales, esto es, en cualquier caso corriente de negligencia que no envuelva ninguna teoría especial como la de una trampa preparada. Sin embargo, aun en el caso en que sólo la negligencia corriente, si la frase puede usarse, ha de imputarse al demandado si la demanda se funda en una teoría, el demandante no puede recobrar fundado en otra. En lo que a mi respecta estoy preparado para resolver que un demandante no tiene derecho a pretender recobrar debido a la omisión de un demandado en protegerle de una maquinaria peligrosa y pretender entonces recobrar en la Corte de Apelación por el fundamento de que todas las actuaciones del demandado constituyeron una trampa preparada.

Como ya he indicado, no encuentro nada en la transcripción de los autos que demuestre ninguna especie de notificación a la demandada de las teorías por las cuales el caso ha sido tramitado o resuelto en esta corte. Digo "tramitado en esta corte" porque en la segunda vista de este caso el abogado del demandante alegó en parte algunos de los hechos o teorías por los cuales la sentencia fué revocada. Son numerosos los casos donde se sostiene que antes de que puedan ser consideradas las alegaciones como enmendadas debe haber alguna clase de notificación hecha al demandado o alguna actuación por su parte por la cual prácticamente está impedido y las enmiendas sólo se permiten para sostener no para revocar una sentencia. Véase toda la nota mono-

gráfica en el caso de *Ellinghouse* v. *Ajax Live Stock Co. L. R. A.* 1916 D, citado en el caso de *Valdés, supra,* y especialmente las páginas 843, 861.

La sentencia de esta corte no se ajusta a las alegaciones. Por supuesto que frecuentemente no puede uno decir cuando se dicta una sentencia cuál fué la teoría de la corte sentenciadora a menos que la corte establezca conclusiones de hecho.   Si la corte inferior en este caso hubiera formulado conclusiones de hecho relativas a que todas las actuaciones de la demandada constituían un lugar atrayente, diría que la sentencia no siguió a la demanda.   Cualquier teoría de un lugar atrayente *vel non,* ya proceda de la teoría de un peligro atrayente o de un deber hacia los niños transgresores si se descubre su presencia, era *coram non judice.* *Baker* v. *Shafter,* 231 S. W. 349; *Fusselman* v. *Yellowstone Valley Land & Irrigation Co.* (Mont.), 163 Pac. 473, *supra.*

Estoy autorizado para decir que el Juez Asociado Aldrey está de acuerdo con esta opinión disidente.