FAJARDO, DEMANDANTE Y APELANTE, *v.* AMERICAN RAILROAD COMPANY, DEMANDADA Y APELADA.

Apelación procedente de la Corte de Distrito de Mayagüez en pleito sobre indemnización.

No. 1852.—Resuelto en julio 8, 1919.

ALEGACIONES—SENTENCIA SOBRE LAS ALEGACIONES—NEGACIÓN DE LOS HECHOS.— Afirmaciones contenidas en una contestación que son contrarias a lo que afirma la demanda equivalen a una negación de ésta.

CERTIFICACIONES NEGATIVAS.—Estando, como estaba autorizado el Secretario del extinguido Consejo Ejecutivo de Puerto Rico para expedir certificados del todo o parte de los documentos obrantes en su oficina, podía también, como consecuencia de esa facultad, certificar que no consta de los documentos bajo su custodia que se haya dictado determinada resolución por el Consejo Ejecutivo.

NEGLIGENCIA—FERROCARRILES—BARRERAS Y CADENAS—PASOS A NIVEL.—De acuerdo con la Ley No. 64 de 1911 que impone a las compañías ferrocarrileras de servicio público el deber de establecer y conservar cadenas, barreras u otros medios adecuados de protección en todos los cruces de las carreteras públicas insulares "y demás cruces públicos que el Consejo Ejecutivo designare" no puede sostenerse que haya incurrido en negligencia una compañía de ferrocarril que, no habiendo sido obligada por el Consejo Ejecutivo a hacerlo, omite tener y conservar por la noche tales medios protectores en el paso a nivel establecido en una calle municipal.

ID.—ID.—SEGURIDAD PÚBLICA—VIGILANCIA EN PASOS A NIVEL—DEROGACIÓN DE LOS ARTÍCULOS 18 Y 19 DE LA LEY DE POLICÍA DE FERROCARRILES DE 1888.— Si bien la Ley de Policía de Ferrocarriles de 1888 disponía en sus artículos 18 y 19 que las compañías de ferrocarriles aseguraran por todos los medios posibles la guarda y el servicio de las barreras en los pasos a nivel y que para el cumplimiento de este precepto habría en todos los puntos que se creyera necesario guardas de vía y vigilantes de día y de noche en número suficiente a la seguridad de los trenes y buen éxito de la explotación, tales preceptos han sido derogados por la Ley 64 de 1911 y su enmienda de 1915.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. Feliú & Alemany y P. Fajardo.*

Abogados de la apelada: *Sres. F. G. Pérez Almiroty, G. H. Moscoso y Eduardo Acuña.*

EL JUEZ ASOCIADO SR. ALDREY, emitió la opinión del tribunal.

La demanda jurada que se presentó en este caso tiene por objeto cobrar indemnización por daños y perjuicios sufridos por el demandante en su propiedad y en su persona. Alegó el demandante en el hecho segundo de la primera causa de acción por daños en su propiedad que el accidente fué debido a la negligencia de la demandada porque el tren que tuvo la colisión con su automóvil caminaba rápidamente al cruzar la calle de Méndez Vigo de Mayagüez sin tocar la campana, sonar el pito, poner cadenas en el cruce, encender luces de alarma o dar otra señal al aproximarse al cruce, por lo que el demandante no tuvo conocimiento de la aproximación del tren a dicho cruce; y en el hecho tercero consignó que los daños a su propiedad consistieron en el valor de su automóvil, que es de $1,350 y en el valor del uso y beneficio de él, que es de $1,000.

La demandada contestó esas alegaciones negando todo lo contenido en dicho hecho segundo tal y como aparece redactado y alegó en oposición que el maquinista del tren hizo sonar el silbato a la salida de la estación de la playa de Mayagüez y caminó a tres o cuatro kilómetros por hora sonando también el fogonero continuamente la campana; que a una distancia de 200 ó 250 metros del paso a nivel de la calle de Méndez Vigo de dicha ciudad volvió el maquinista a usar el silbato de la locomotora para indicar su aproximación a dicho paso a nivel, continuando su marcha a la misma velocidad de tres o cuatro kilómetros por hora y sin dejar el fogonero de tocar la campana de la locomotora; que al entrar en el paso nivel dicho y observar que un automóvil iba hacia él a gran velocidad y que apresuraba su marcha para cruzar frente a la locomotora hizo el maquinista, acto seguido, cuantos esfuerzos estuvieron a su alcance para detener la locomotora, aplicando inmediatamente el freno de aire y dando contra marcha, aunque todo fué inútil

para evitar el choque; que la locomotora llevaba en aquel momento encendido un foco de gas acetileno en su parte delantera cuyo radio de acción iluminatoria alcanzaba a una distancia de 200 a 250 metros claramente visibles, luz que constituía una señal inequívoca de la aproximación del tren; que en dicho paso nivel en aquel momento existían postes en los que se leen en español e inglés las palabras "ojo al tren", "párese", "mire", "oiga"; que también habían aquella noche luces rojas encendidas en el cruce, visibles a una distancia de 300 metros para los que cruzan la vía; que la demandada no está obligada por la ley a poner cadenas, guarda-barrera o luces en aquel sitio, como de contrario se alega, y, por tanto, negaba específicamente cuanto a este respecto se dice en la demanda; que expontáneamente ha puesto cadenas en aquel sitio desde la salida a la puesta del sòl y por las noches sustituye esos servicios con el de luces rojas, servicios ambos que conocía el demandante. En cuanto al hecho tercero admitió que ocurrió el choque pero negó que fuera resultado de lo expuesto en el hecho segundo y negó además por falta de información que el automóvil quedara inutilizado para servicio alguno y a que estaba dedicado.

En el recurso de apelación interpuesto por el demandante contra la sentencia de la Corte de Distrito de Mayagüez que declaró sin lugar su demanda alega como primer motivo para solicitar la revocación de la sentencia que la corte inferior cometió error al negar su petición de que dictase sentencia sobre las alegaciones porque, el demandado no había negado específicamente los hechos antes consignados de su demanda.

Aunque el demandado negó de una manera general el hecho segundo de la primera causa de acción, sin embargo, como alegó en contrario materia que es una oposición completa a todos los extremos consignados en dicha alegación, resultó de este modo negada específicamente dicha alegación ya que las afirmaciones en una contestación contrarias a lo que afirma la demanda equivalen a una negación de ésta y,

por tanto, la corte inferior no cometió el error que se le atribuye. *Hill* v. *Smith,* 27 Cal. 476; *Pfister* v. *Wade,* 69 Cal. 133; *Perkins* v. *Brock,* 80 Cal. 320; *Burris* v. *People's Ditch Company,* 104 Cal. 248; *Stetson* v. *Briggs,* 114 Cal. 511.

Se funda el segundo motivo del recurso en que la corte inferior admitió erróneamente como prueba durante el juicio dos certificaciones.

Según la exposición del caso que se nos ha presentado, la demandada adujo en evidencia "una certificación expedida por el secretario del extinguido Consejo Ejecutivo, Pedro Castro, concerniente a lo que se refiere la Ley No. 35 de 1911, enmendada por la ley de 1916, respecto a pasos a niveles" y el demandante se opuso a su admisión por ser una cuestión de ley que no puede probarse con certificación, pero la corte la admitió y el demandante tomó excepción.

También presentó la demandada y admitió la corte inferior con la oposición del demandante una certificación del secretario municipal accidental del municipio de Mayagüez creditiva de que en dicho municipio no existe ordenanza municipal que regule el paso de trenes dentro de dicha municipalidad.

Hemos copiado literalmente lo que aparece de la transcripción con respecto a la primera certificación no solamente porque lo que en ella se consigna no nos da conocimiento de lo que la certificación dice, excepto que se refiere a pasos a nivel, sino además porque la Ley No. 35 de 1911 no trata sobre pasos a nivel ni en 1916 hay ley alguna que trate sobre esa materia. Creemos, sin embargo, que se ha querido hacer referencia a la Ley No. 64 de 1911 y a su enmienda de 1915 por la Ley No. 12, pues éstas se refieren a que las compañías de servicio público están obligadas a establecer y conservar cadenas, barreras y otros medios adecuados de protección en los cruces de las carreteras públicas insulares y en los demás cruces públicos que el Consejo Ejecutivo designare; y si, como suponemos, la certificación se refiere a que

el Consejo Ejecutivo no había dispuesto que en el cruce de la calle Méndez Vigo se pusieran barreras o cadenas, era ésta una cuestión de hecho que podía probar la demandada.

El apelante no sostiene ahora su objeción por el motivo que alegó en la corte inferior, sino porque entiende que el secretario del Consejo Ejecutivo no está facultado para certificar hechos que no consten de los documentos obrantes en su oficina. Nosotros opinamos que estando autorizado dicho secretario para expedir certificados de todo o parte de los documentos obrantes en su oficina, puede también, como consecuencia de esa facultad, certificar que no consta de los documentos bajo su custodia que se haya dictado determinada resolución por el Consejo Ejecutivo. De todos modos no resulta perjuicio alguno para el apelante porque si era necesario probar que el Consejo Ejecutivo había designado que en ese cruce se pusieran dichos medios de seguridad a él correspondía esa prueba y lo que hizo el apelado fué demostrar que tal designación no fué hecha.

En cuanto a la segunda certificación alega ahora por primera vez el apelante que no era admisible porque siendo el secretario municipal el autorizado por la ley para expedir certificaciones del archivo municipal, cuando firma otra persona por él tiene que hacer constar que lo hace a nombre y representación del propietario y firmar en igual forma. Como no conocemos los términos en que la certificación fué firmada no estamos en condiciones de considerar la cuestión propuesta.

Los otros seis motivos de error que se alegan pueden considerarse conjuntamente porque se refieren a la apreciación de la prueba por la corte inferior y a la interpretación de la ley aplicable al caso.

Del examen de la prueba resulta que en la madrugada del 26 de marzo de 1917 y en el sitio en que la vía férrea de la demandada cruza la calle Méndez Vigo de la ciudad de Mayagüez, ocurrió una colisión entre la locomotora del tren de

la demandada y un automóvil del demandante en que él viajaba con otras personas, al intentar cruzar la vía férrea.

Con respecto a la causa del accidente la corte inferior declaró probado que el demandante no aminoró la marcha de su automóvil al entrar en ese cruce, sabiendo que por las noches la demandada ponía únicamente en él luces rojas para indicar su existencia, las que estaban encendidas; que la locomotora llevaba un potente foco de luz cuyo radio de acción alcanza por lo menos a 200 metros; que en dos ocasiones el maquinista hizo uso del pito de la locomotora y el fogonero de la campana, la primera al salir de la estación de la playa luego a una distancia de 150 a 200 metros del mencionado cruce, y que la locomotora caminaba a una velocidad máxima de 5 a 6 kilómetros por hora.

Con tales hechos y estimando la corte inferior que la demandada no está obligada por la ley u ordenanza alguna vigente en la época del accidente, a mantener en ese cruce servicio de cadenas o guarda-barreras, ni luces de alarma, llegó a la conclusión de que el choque fué debido única y exclusivamente a la culpa y negligencia del demandante y declaró sin lugar su reclamación.

Aun cuando el apelante dedica gran parte de su alegato a atacar algunas de las conclusiones de hechos a que llegó el juez de la corte inferior para demostrar que no están sostenidas por las pruebas, tales como que no aminoró la marcha de su automóvil al entrar en el cruce y que la locomotora caminaba a una velocidad máxima de 4 a 6 kilómetros por hora, sin embargo, el hecho cierto es que conociendo el demandante la existencia del cruce de ferrocarril de la demandada en la calle Méndez Vigo y que de noche no se ponían en él cadenas y sí únicamente luces rojas para indicar la existencia del cruce y que por haber casas próximas se hacía difícil ver la llegada de los trenes, entró en la vía férrea sin tomar precaución alguna y sin prestar atención a las señales que con el pito y la campana hacía el tren, ni el po-

tente foco de luz que llevaba en su parte delantera, por lo que a nuestro modo de ver la cuestión el punto importante a resolver es, como también lo entiende el apelante, si la demandada tenía el deber legal de poner cadenas o barreras en dicho cruce al pasar sus trenes por allí.

Sostiene el apelante que de acuerdo con la Ley No. 64 de 1911 enmendada por la No. 12 de 1915, la demandada está obligada a poner cadenas o barreras en el cruce a que venimos refiriéndonos, pero que si no lo está de acuerdo con esas leyes porque el Consejo Ejecutivo no haya dictado reglas respecto de él, entonces la obligación surge de la ley de policía de ferrocarriles del año 1888.

Dispuso la Ley No. 64 de 1911 en su sección 12 que toda compañía de ferrocarril de servicio público está obligada a establecer y conservar cadenas, barreras u otros medios adecuados de protección en todos los cruces de las carreteras públicas insulares y demás cruces públicos que el Consejo Ejecutivo designare. La Ley No. 12 de 1915 no alteró ese precepto pues lo reprodujo literalmente y la enmienda de la anterior consistió únicamente en agregarle que con sujeción a las reglas, reglamentos y órdenes del Consejo Ejecutivo todos los ferrocarriles de servicio público deberían cercar o en otra forma defender sus vías para evitar que en ellas entren animales y hacer otras cosas que no son del caso ahora. En el caso de *Domínguez* v. *Porto Rico Railway, Light & Power Company,* 19 D. P. R. 1090, considerando la expresada Ley No. 64 reconocimos el deber de los ferrocarriles de servicio público de poner cadenas, barreras u otros medios de seguridad de parecida índole en las carreteras públicas insulares, pero la cuestión en este caso es si tenía también ese deber legal en el cruce de la calle Méndez Vigo.

Nosotros opinamos que la Ley No. 64 sólo impone ese deber en los pasos a nivel o cruces en las carreteras públicas insulares y en aquellos otros que el Consejo Ejecutivo designare; y como la calle de Méndez Vigo no es una carre-

tera pública insular sino una calle de la población de Ma-
yagüez, ni el Consejo Ejecutivo ha dispuesto que en tal cruce
se pongan barreras, cadenas u otros medios de protección de
la índole de esos, no estaba obligada la demandada a tener
tales medios de protección en dicho sitio y, por tanto, no ha
incurrido en negligencia al dejar de tenerlos.

En cuanto a la ley de policía de ferrocarriles de 1888,
si bien disponía en sus artículos 18 y 19 que las compañías
de ferrocarriles aseguraran por todos los medios posibles la
guarda y el servicio de las barreras en los pasos a nivel y
que para el cumplimiento de este precepto habría en todos
los puntos que se creyera necesario guardas de vías y vigi-
lantes de día y de noche en número suficiente a la seguridad
de los trenes y buen éxito de la explotación, tales preceptos
han sido derogados por la Ley No. 64 de 1911 y su enmienda
de 1915 al determinar el legislador que se establezcan ca-
denas, barreras u otros medios adecuados de protección en
las carreteras públicas insulares y en los demás cruces que
designe el Consejo Ejecutivo.

Por todo lo expuesto entendemos que no hubo negligencia
alguna por parte de la demandada y que el accidente ocurrió
únicamente por el descuido y negligencia del demandante,
por lo que la sentencia apelada debe ser confirmada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Aso-
ciados Wolf, del Toro y Hutchison.