MARÍA PANTOJA y JOSÉ SERRANO, demandantes y apelantes, *v.* THE AMERICAN RAILROAD COMPANY OF PORTO RICO, demandada y apelada.

No. 6004.—*Sometido:* Marzo 23, 1933. *Resuelto:* Julio 22, 1933.

*Pascasio Fajardo,* abogado de los apelantes; *Mariano R. Acosta Ve-larde,* abogado de la apelada.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Éste es un pleito iniciado por los padres de un menor que murió a. consecuencia de un choque con un vagón del ferrocarril de la demandada.

Presentada la demanda, la demandada pidió y obtuvo la eliminación de ciertos particulares de la misma, y archivada la demanda enmendada, la excepcionó y contestó. Fué el pleito a juicio y practicada prueba por ambas partes, la corte dictó sentencia declarando la demanda sin lugar. No emitió opinión, pero requerida por los demandantes, lo hizo, y de ella transcribimos los siguientes párrafos:

"De la evidencia presentada, así como de la inspección ocular, la corte considera probados los siguientes hechos:

"Que los demandantes son los padres naturales del menor Virginio Serrano. Que el José Serrano, padre del menor Virginio Serrano, abandonó a la demandante Mariana Pantoja, y a su hijo, desde que dicho menor tenía la edad de cinco meses, habiendo vivido la demandante y el menor desde dicha fecha, con el testigo Pablo Castro . . . Que la demandada the American Railroad Company

of Porto Rico es una corporación de Servicio Público, . . . dedicada a la explotación de un ferrocarril, para la conducción de pasajeros y carga, teniendo establecida en el pueblo de Mayagüez, en el barrio de Marina Septentrional, una estación denominada 'Mayagüez Playa.' Que en dicha estación y al frente de la misma, o sea, hacia el saliente, está el campo de maniobras (Railroad Yard) de la demandada, donde existen unas siete vías. Que los terrenos de dicho campo de maniobras están encerrados, teniendo hacia el poniente una muralla de 1 metro setenta centímetros de alto por unos 344 metros de largo y por el saliente existe una muralla de hormigón de una altura de un metro 40 centímetros de alto, y por el Norte y Sur, la vía férrea que utiliza la demandada en su negocio. Que en los terrenos de la estación Mayagüez Playa, así como en el campo de maniobras, no hay camino ni vereda que la cruce o atraviese, quedando cercado por las murallas que existen al Oeste y al Este. Que el menor Virginio Serrano, en la fecha del accidente, vivía con Pablo Castro, en una casa radicada en terrenos que colindan con el campo de maniobras (Railroad Yard) de la estación Playa y que están separados del mismo por el muro de un metro 40 centímetros de alto que queda al saliente de dicho campo de maniobras. Que el día 16 de febrero del año 1929, el menor Virginio Serrano se encontraba pastando una cabra en los terrenos donde está el campo de maniobras (Railroad Yard) de la demandada, estando dicho menor con su cuerpo recostado del último, en la dirección de San Juan a Mayagüez, de tres vagones que se encontraban estacionados en el campo de maniobras (Railroad Yard) de la demandada. Que el Virginio Serrano tenía sus pies entre los dos raíles de las vías donde estaban dichos vagones y en sus manos sostenía una soga que amarraba la cabra que estaba pastando. Que mientras el menor se encontraba en la posición descrita, la locomotora No. 56 manipulada allí y entonces por Ricardo Nublet, empleado de la demandada, se encontraba efectuando maniobras para tomar aceite y al entrar en las vías donde estaban estacionados los tres vagones a que nos hemos anteriormente referido, chocó o empujó el primero de dichos vagones, en la dirección de San Juan a Mayagüez, poniendo en movimiento los mismos, y arrollando el último de dichos vagones al menor Virginio Serrano, ocasionándole la muerte a consecuencia de las heridas recibidas. Que la locomotora 56 hizo la referida maniobra a la marcha acostumbrada y el maquinista que manipulaba la misma no vió al menor Virginio Serrano hasta después de ocurrido el accidente. Que los empleados de la demandada por la posición

y sitio que ocupaba el menor Virginio Serrano, no podían sospechar ni tenían motivos para creer que dicho menor estuviera en tal sitio.

"La corte, por la evidencia practicada e inspección ocular, ha llegado a la conclusión de que el menor Virginio Serrano era un transgresor y que los empleados de la demandada, al maniobrar la locomotora No. 56, no tenían razón o motivo alguno para creer que dicho menor se encontraba en el sitio donde fué arrollado. No hay evidencia alguna, que demuestre, que el maquinista de la locomotora 56 viera antes del accidente al menor, en la situación de peligro donde voluntariamente se había colocado. Ni de las alegaciones del caso, ni de la evidencia presentada, tanto por la parte demandante como por la demandada, ni de la inspección ocular, surge que la demandada tuviera alguna obligación o deber especial para con el precitado menor en el sitio del accidente, salvo el deber de no inferirle voluntariamente daño. De la evidencia resulta que el sitio del accidente no es un sitio público ni donde el menor Virginio Serrano tuviera derecho a estar . . ."

No conformes los demandantes, apelaron para ante esta Corte Suprema. Señalan en su alegato la comisión de nueve errores que argumentan extensamente. Sostienen por el primero que la corte erró al decretar las eliminaciones solicitadas por la demandada, especialmente la del siguiente párrafo del hecho séptimo de su demanda:

"Que a no haber sido por el accidente relacionado 'que ocasionó su muerte hubiera vivido por lo menos unos cuarenta años más, durante el cual tiempo hubiera razonablemente proporcionado a sus padres los demandantes diez mil dollars para sus necesidades más perentorias de la vida."

Aceptando que tuvieran razón los demandantes, el error cometido no sería perjudicial. La cuestión carece de mérito si se concluye como habremos de concluir que la prueba demuestra que la acción ejercitada carecía de fundamento.

Los señalamientos segundo al octavo se refieren a que la corte erró al desatender la clara prueba de los demandantes, al no seguir los artículos 60 del Código de Enjuiciamiento Civil y 1803 y 1804 del Código Civil y la jurisprudencia interpretativa de los mismos, al no aplicar la doc-

trina de "Last Clear Chance", al estimar que medió culpa por parte del menor, al no condenar a la demandada a indemnizar a los demandantes·y al desestimar su moción sobre enmienda a la demanda para conformarla con la prueba.

Todos ellos dependen de si la corte apreció bien o mal la evidencia practicada.

A nuestro juicio no se ha demostrado que la corte actuara movida por pasión, prejuicio o parcialidad o que cometiera error manifiesto alguno al apreciar la evidencia practicada por ambas partes llegando, después de resolver las contradicciones existentes en la misma en pro de la de la demandada, a las conclusiones que dejó establecidas en su relación del caso y opinión.

Fijados los hechos en la forma en que lo fueron, son los procedentes los principios de derecho que aplicara el tribunal sentenciador.

Si el accidente ocurrió dentro del campo de maniobras de la demandada que si bien está a continuación de la estación del ferrocarril no es un sitio al que deba ir o se invite a ir al público y si dicho sitio estaba además cercado y separado de la casa en que vivía el niño que sufrió el accidente por un muro de hormigón de más de un metro de alto, sin que existiera por dentro de él camino ni vereda algunos, hay que concluir que el niño era un transgresor que como regla general no puede invocar en su favor cualquier descuido que hubieran cometido los empleados de la demandada en la maniobra de sus trenes.

Estamos conformes con la parte apelante en que esa regla general tiene excepciones y aceptamos la jurisprudencia sobre la materia tal como surge del párrafo que cita de la opinión de la Corte Suprema de Virginia en el caso de *Pannill* v. *Potomac, F. & P. R. Co.*, reportado en 4 L.R.A. (N.S.) 80, 83, como sigue:

"La regla general es que el terrateniente no tiene para con el transgresor (y lo mismo se aplica a un mero *licensee*) el deber de mantener su terreno en un estado de seguridad para que el trans-

gresor pueda penetrar en él. El transgresor ordinariamente no tiene derecho de acción por el daño que le haya ocurrido a causa de la naturaleza de la propiedad en que penetró, y él asume el riesgo del estado del terreno, y a fin de que tenga derecho a indemnización por un daño que le ocurra debe demostrar que el mismo fué infligido protervamente, o que el dueño u ocupante, hallándose presente, pudo haber evitado el daño mediante el ejercicio de cuidado ordinario una vez descubierto el peligro.. Norfolk & W. R. Co. v. Wood, 99 Va. 156, 158, 159, 37 S. E. 846; Hortenstein v. Virginia-Carolina R. Co., 102 Va. 914, 918, 47 S. E. 996; Williamson v. Southern R. Co., 104 Va. 146, 11 Va. L. Reg. 289, 70 L. R. A. 1007, 51 S. E. 195; ' Bishop, Non-Contract Law, par. 845; Cooley, Torts, 2d ed., 791-794.''

Pero habiéndose declarado probado ''que la locomotora No. 56 hizo la referida maniobra a la marcha acostumbrada y el maquinista que manipulaba la misma no vió al menor Virginio Serrano hasta después de ocurrido el accidente y que los empleados de la demandada por la posición y sitio que ocupaba el menor, no podían sospechar ni tenían motivos para creer que dicho menor estuviera en tal sitio,'' no cabe considerar este caso como uno de excepción, ni es aplicable al mismo la doctrina de ''last clear chance.''

■ El solo hecho de ser menor la víctima del accidente no impide que pueda ser considerada como un transgresor. Cuando se trata de un niño debe tenerse mayor cuidado que cuando se trata de un adulto, debe serse más exigente con el demandado, debe tomarse en consideración el menor desarrollo de la inteligencia del niño tanto para realizar el acto constitutivo de la transgresión cuanto para poder defenderse del peligro, pero aun así no creemos que en este caso concreto pueda exigirse responsabilidad a la compañía. El menor contaba catorce años de edad. Vivía con su madre que vivía a su vez con el testigo Castro que declaró que había enviado al menor a comprarle cigarrillos ocurriendo el accidente al regresar con la compra. Bien encontrara la muerte al atrechar por dentro del campo de maniobras para llegar más pronto a su casa, ya la recibiera por haberse acercado demasiado, mientras daba de comer a la cabrita, a un va-

gón que lo arrolló súbitamente, es lo cierto que ocupaba un sitio que no tenía derecho a ocupar y que su muerte la produjo un accidente debido quizá a la negligencia de la demandada por no mantener en estado perfecto la aguja de uno de los desvíos de su campo de maniobras, pero sin que fuera visto por los que funcionaban la locomotora y la aguja a tiempo de poder evitar el accidente.

El último error fué abandonado. La parte apelante aseguró que la corte no había emitido opinión en el caso. La parte apelada presentó una copia de la opinión emitida a requerimiento mismo de la apelante y ésta en un alegato posterior desistió de seguir sosteniendo el error señalado y discutido.

*Debe confirmarse la sentencia recurrida.*