JUAN RAFAEL BERRÍOS, representado por su padre JUAN BERRÍOS, demandante y apelante, v. GUILLERMO GARÁU, demandado y apelado.

No. 5964.—*Sometido:* Diciembre 21, 1933. *Resuelto:* Mayo 31, 1934.

800

*Martínez Nadal & Martínez Rivera,* abogados del apelante; *C. Domínguez Rubio* y *Luis · F. Camacho,* abogados del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

El menor Juan Rafael Berríos, representado por su padre Juan Berríos Ortiz, compareció ante la Corte de Distrito de Guayama y demandó a Guillermo Garáu en reclamación de veinte mil dólares por daños y perjuicios sufridos al perder tres dedos de la mano izquierda en un accidente que:

"Se debió exclusivamente a la culpa, descuido y negligencia del demandado Guillermo Garáu, sus agentes, empleados o subalternos, consistente dicha negligencia entre otras cosas en los siguientes particulares:

"(*a*) En que sabiendo como sabía el demandado que la maquinaria que usaba en su dicha panadería era peligrosa para los niños que él mismo sabía acostumbraban a entrar en dicho local y que él mismo consentía tener cerca de dicho local, no tomó las precauciones necesarias para tener aislada dicha maquinaria, o de otra manera, resguardada en alguna forma que evitara que niños menores de 10 años como lo es el demandante aquí, se acercaran a ella y pudieran ser, como resultó lesionado el menor demandante por el atractivo o curiosidad que a los niños tal maquinaria tiene que causar como causó al menor demandante en este caso.

"(*b*) Porque dicho demandado Guillermo Garáu arrendó al pa-

dre del menor demandante una casa contigua a su dicha panadería, cuyo patio se comunicaba con el de la dicha panadería y no tenía ninguna verja, empalizada, valla, ni ningún otro instrumento que separara el patio de la dicha casa arrendada al padre del menor demandante y la de su dicha panadería y dicho demandado sabía que el menor demandante residía con su padre en dicha casa y frecuentaba dicho patio constantemente donde se entretenía jugando con otros muchachitos de su edad, y menos de 10 años, y la puerta de la dicha panadería que da al patio donde se entretenía jugando el menor demandante, siempre estaba abierta, sin que ninguna persona cuidara de que niños como el demandante penetraran a dicho local de la panadería y sin que nadie evitara tampoco que un menor como el demandante aquí, frecuentara dicho sitio atraído por la curiosidad de la maquinaria que caminaba movida por electricidad y con ruedas de engranaje como las que dicha levadora tenía allí y entonces.

''(c) En que el demandado no advirtió en ningún momento a ninguna persona el peligro que corrían los niños que él mismo veía y sabía que jugaban en aquel sitio, o patio sin cercar que él mismo mantenía allí y entonces tan cerca de dicha maquinaria en su dicha panadería y cobraba al padre del menor demandante por la casa que le tenía arrendada en dicho sitio, la suma de $8 mensuales sin que dicha maquinaria hubiera sido familiar a dicho niño, y siendo la misma peligrosa *per se,* no ya solamente para niños como el demandante, si que para adultos, y sin que tuviera ninguna persona al cuidado de dicha maquinaria o aparatos que la separaran de un sitio tan accesible para cualquier persona, como en el que la misma se encontraba, para que niños como el demandante pudieran frecuentar tan cerca de ella que les causara daños como los que le causó al menor demandante allí y entonces.''

Contestó el demandado. Fué el pleito a juicio. Practicóse una larga prueba y la corte dictó sentencia en contra del demandante. Cuatro errores señala éste en su alegato para pedir la revocación de la sentencia.

El primero se formula así: ''La Corte de Distrito de Guayama cometió error al denegar la moción del demandante solicitando una sentencia a su favor por las alegaciones.''

La demanda está jurada y la alegación de ella que hemos transcrito fué negada en la contestación como sigue:

''Niega el demandado todo el contenido de la alegación 4 (dupli-

cado) de la demanda, no sólo en su preámbulo si que también en los apartados A, B, C incluyendo aquellas conclusiones contenidas en cada uno de dichos párrafos A, B y C.''

Y basándose en ello el demandante pidió a la corte que dictara una sentencia en su favor invocando los artículos 110 y 113 del Código de Enjuiciamiento Civil y los casos de *Horton et al.* v. *Robert,* 11 D.P.R. 176, *Delanoy* v. *Blondet,* 22 D.P.R. 236, *Fernández* v. *Ruiz Soler,* 27 D.P.R. 80 y *Santiago* v. *Cabán,* 23 D.P.R. 509, en los cuales se sostiene la doctrina de que cuando la demanda es jurada, las negaciones contenidas en la contestación deben ser específicas y si no lo son y si no se alegan nuevos hechos constitutivos de defensa, se considerarán aceptados los hechos alegados en la demanda y podrá dictarse una sentencia sobre las alegaciones si así se solicita.

Se opuso el demandado:

''1ro. Porque la negativa contenida en la contestación es suficiente;

''2do. Porque de no serlo así, las defensas especiales alegadas por el demandado controvierten las alegaciones de la demanda; y

''3ro. Porque aún aceptando que no fuera así, el demandante ha perdido sus derechos (*a*) por no haber presentado moción para sentencia por las alegaciones y (*b*) porque presentó prueba para tratar de sostener esas alegaciones que ahora dice fueron admitidas.''

La corte de distrito resolvió la cuestión levantada en contra del demandante, con razón a nuestro juicio.

En primer lugar la cuestión se suscitó demasiado tarde. En el caso de *Ana María Sugar Co.* v. *Castro et al.,* 28 D. P.R. 241, 260, dijo esta corte:

''Sostiene también la apelante que la corte debió haber dictado sentencia sobre las alegaciones. En primer lugar somos de opinión de que una moción para que se dicte sentencia basada en las alegaciones debe hacerse antes de que se llame el caso a juicio, por los mismos principios discutidos en el caso de El Pueblo v. París, 25 D.P.R. 111. Debe presumirse que si el demandante va a juicio sin promover la cuestión de la suficiencia de la contestación, ya mediante tal moción o por moción para eliminar, él está conforme con las cues-

tiones como han sido alegadas. Tal moción, en beneficio de la justicia, no debe hacerse a manera de sorpresa en el juicio.''

Y en segundo lugar en su contestación el demandado no se limitó a la negativa de referencia. Levantó doce defensas especiales que hemos examinado y que estamos de acuerdo con la corte sentenciadora en que constituyen una suficiente negación de y oposición a los hechos todos de la demanda, quedando así subsanado el defecto. En el caso de *Fajardo* v. *American Railroad Company*, 27 D.P.R. 608, 610, resolvió esta corte:

"Aunque el demandado negó de una manera general el hecho segundo de la primera causa de acción, sin embargo, como alegó en contrario materia que es una oposición completa a todos los extremos consignados en dicha alegación, resultó de este modo negada específicamente dicha alegación ya que las afirmaciones en una contestación contrarias a lo que afirma la demanda equivalen a una negación de ésta y, por tanto, la corte inferior no cometió el error que se le atribuye, Hill v. Smith, 27 Cal. 476; Pfister v. Wade, 69 Cal. 133; Perkins v. Brock, 80 Cal. 320; Burris v. People's Ditch Company, 104 Cal. 248; Stetson v. Briggs, 114 Cal. 511."

No hubo error. Los señalamientos dos, tres y cuatro pueden estudiarse conjuntamente. Por el segundo se sostiene que la corte erró al resolver que no es aplicable a los hechos de este caso la doctrina del peligro atrayente, por el tercero que erró también al decidir que el accidente no se debió a la culpa, descuido y negligencia del demandado y por el cuarto que erró la corte al dictar sentencia declarando la demanda sin lugar.

En su relación del caso y opinión declaró probados la corte sentenciadora los siguientes hechos:

"Que el demandado Sr. Guillermo Garáu tiene arrendado un establecimiento de panadería sito en la calle de la Fidelidad, de Guayama, el cual se dedica a la elaboración de pan para la venta.

"Que en dicha panadería existen un torno, una amasadora y un motor eléctrico para mover dichas máquinas las cuales están sin protección.

"Que el patio de dicha panadería sirve de patio también a dos casas contiguas a dicho establecimiento, entre las cuales se encontraba la casa que habitaba el demandante Juan Berríos con su hijo el lesionado.

"Que el día 3 de noviembre de 1926, como entre siete y ocho de la mañana, el menor Juan Rafael Berríos y Sierra, hijo legítimo del demandante, estaba en su casa tomando café y que al ir la sirvienta que lo atendía a atender a la madre del dicho niño que se encontraba recién parida, el menor en cuestión se lanzó al patio de la casa, penetrando en la panadería hasta la máquina amasadora de pan que estaba en movimiento en aquellos momentos, sufriendo una lesión que le ocasionó la pérdida de los tres dedos medios de su mano izquierda o sean el índice, el pulgar y el anular que le fueron amputados por su parte media.

"Que la puerta de la panadería que da al patio contiene una puerta de madera y otra de tela metálica que cierra automáticamente por estar montada sobre goznes de presión.

"Que desde las puertas de la panadería en cuestión tanto las del frente como las del fondo, no puede verse la maquinaria que funciona en el interior y sí oírse el ruido o trepidación que la misma produce cuando se encuentra en movimiento.

"Que el niño lesionado era la primera vez que iba o penetraba en la panadería ya citada.

"Que el niño Juan Rafael Berríos tenía a la fecha del accidente la edad de dos años y ocho meses, encontrándose hoy privado de los dedos a que nos referimos anteriormente con motivo del referido accidente.

"Que el niño en cuestión jugaba en el citado patio que pertenecía también a su casa.

"No aparece de la prueba practicaba que persona alguna viera entrar al menor en la panadería para determinar la forma en que se encontraba la puerta de entrada en aquellos momentos, declarando todos los testigos que se dieron cuenta de la presencia del menor en la panadería cuando él gritó y fueron a auxiliarle habiendo ocurrido ya el accidente desgraciado."

Hemos estudiado la evidencia aportada por ambas partes y con excepción de la conclusión que contiene el último párrafo de los transcritos con respecto a no poder determinarse el estado en que se encontraba la puerta de entrada de la panadería que da al patio cuando por ella penetró el menor,

estamos enteramente conformes con la corte sentenciadora. En cuanto a dicho extremo creemos que se demostró que la puerta tuvo necesariamente que estar abierta cuando pasó el menor demandante.

Declarados probados los hechos que dejamos transcritos, dijo la corte sentenciadora:

"El demandante hace descansar su caso en la jurisprudencia de nuestra Corte Suprema en el caso de Rivera v. The Porto Rico Drug Co., 32 D.P.R. 510 en que se hace un estudio de la teoría del peligro atrayente que es la que sirve de base a la demanda en la presente acción; y los abogados del demandado nos han presentado un brillante alegato que comprende un estudio acabado en cuanto a la referida teoría legal y a la interpretación dada a la misma por las cortes americanas incluyendo en éstas a la Corte Suprema de la nación."

Continuó refiriéndose a la teoría del peligro atrayente con cita de autoridades y volviendo al caso de Rivera, supra, sostuvo que no es igual al presente, porque:

"En dicho caso el niño que sufriera el accidente estaba en el local constantemente, se le utilizaba para lavar las botellas y se le daban los residuos del helado que allí se fabricaba; los demás muchachos acudían a aquel sitio en busca también del helado impropio para la venta que se les regalaba, y en puridad de verdad aquel sitio se había convertido en un lugar atrayente para los niños, no porque la maquinaria los atrajera, sino porque allí encontraban confituras que les eran regaladas.

"En el caso que nos ocupa los hechos son distintos: el niño nunca había entrado en la panadería a pesar de haber jugado en el patio del establecimiento que era el de su casa también, en varias ocasiones; la maquinaria del establecimiento en cuestión no podía ser vista por él desde el patio y solamente el ruido de ella podría atraer su curiosidad."

Entonces se pregunta:

"¿Podríamos admitir en este caso, dada la forma en que ocurrieran los hechos y teniendo en cuenta la actitud del niño con anterioridad al accidente que la máquina en cuestión constituía o constituyó un atractivo para el menor demandante?"

Y se contesta:

"A nuestro juicio sería muy arriesgado el llegar a tal conclusión. La prueba presentada no demuestra que en ningún momento con anterioridad al accidente el niño mostrara su curiosidad por ver la máquina o enterarse de lo que ocurría en el interior de la panadería; entró allí, no sabemos a qué y por qué razón; nadie lo vió entrar; no sabemos cómo se encontraba la puerta de entrada, ni lo que él hiciera cuando se encontró adentro; y a nuestro juicio estaría fuera de ley, si hiciéramos responsable al demandado de negligencia en tales circunstancias.

"Todos lamentamos intensamente la desgracia ocurrida al menor demandante, hecho en un todo desgraciado y nos parece que el mismo ocurrió por un accidente de la suerte, y que no debemos hacer de él a nadie responsable, sino al azar que interviene con tanta frecuencia en nuestros asuntos y a veces nos causa desgracias irreparables de las cuales nadie puede responder."

El demandante dejó de demostrar su alegación de que no obstante conocer el demandado lo peligroso de sus máquinas para los niños "que sabía acostumbraban a entrar en dicho local y que él mismo consentía tener cerca de dicho local, no tomó las precauciones necesarias para tener aislada dicha maquinaria."

Por más esfuerzos que hizo no logró el demandante demostrar que al sitio de la panadería en que se encontraban las máquinas, entraran niños. Tampoco que las máquinas estuvieran colocadas de tal modo que pudieran verse desde el patio atrayendo con su funcionamiento la curiosidad de los niños. Sólo se escuchaba en el patio el ruido que producían al funcionar.

El demandado demostró que las máquinas estaban en el interior del edificio y que en la entrada que da al patio existían dos puertas, una de ellas de las llamadas de golpe, esto es, que al abrirse se cerraba por sí misma. La maquinaria no estaba resguardada, pero no se demostró que fuera peligrosa de tal suerte que exigiera el resguardo exterior, siendo la forma de su instalación la corriente y la admitida por las autoridades gubernamentales. No se demostró que

se pusiera a funcionar estando allí el niño demandante o mientras pudiera ser alcanzada por niño alguno. Bajo esas circunstancias, puede sostenerse que el demandado hizo lo que la ordinaria prudencia aconseja para aislar sus máquinas evitando que pudieran invitar al peligro y causar daño a personas ajenas a su funcionamiento.

Sólo nos han hecho vacilar las circunstancias de ser el patio común a la panadería y a la casa del demandante habiendo sido el demandado el que alquiló la casa del demandante al padre del mismo para vivienda, y la de que si la puerta de la panadería que da al patio no hubiera quedado abierta, el niño no hubiera podido entrar y no hubiera ocurrido el accidente, pudiendo haber sido atraído el niño a entrar por el ruido de la maquinaria en movimiento.

¿Colocan esas circunstancias el caso dentro de la doctrina del peligro atrayente? Creemos que no.

En el citado caso de *Rivera* v. *The Porto Rico Drug Co.*, 32 D.P.R. 510, 522, se cita del Suplemento de White, pág. 170, lo que sigue:

"La mejor regla—y la que ha sido más vigorosamente sostenida por las autoridades—no considera a un niño de pocos años, que ha sido atraído a las propiedades por existir en ellas algo que incite sus instintos y curiosidad de niño, como un transgresor. La ley considera la existencia de tal objeto o condición como un llamamiento tácito para que el niño entre en el sitio. 'Lo que sería una invitación expresa para un adulto, la tentación de algo que lo atrae al juego lo es también para un niño de corta edad.' De acuerdo con esta regla una persona que tiene en su propiedad un aparato peligroso, aunque en sí no es atractivo, pero que está colocado tan cerca de un punto atractivo en la propiedad que con él constituye una condición peligrosa, puede ser responsable por los daños ocasionados a un niño por el mismo, a pesar de que la condición atractiva no sea peligrosa en sí. Si la propiedad en un caso determinado es suficientemente atractiva para inducir al niño al peligro y sugerir al dueño la posibilidad de un accidente, son cuestiones de hecho para la consideración del jurado."

Y se cita, además, entre otra, la siguiente jurisprudencia:

"El dueño de ruedas engranadas giratorias que no están protegidas y que han sido colocadas en un espacio abierto a 20 pies de una calle, es responsable por el daño que le cause dicha maquinaria a un niño de tres años de edad, y el hecho de que dicho niño fuera un transgresor nada tiene que ver. Whirley v. Whiteman, 1 Head, 610. La corte dijo que, al jugar alrededor de dichas ruedas dentadas, el muchacho no hacía otra cosa sino ejercitar los instintos naturales de un niño." Louisville and N. R. Co. v. Steele, L.R.A. 1918 D, 317.

"Una buena causa de acción por daños causados a un niño se resolvió que era la contenida en una demanda en la cual se alegaba que el demandado funcionaba un molino aplanador sin protección, situado en un solar sin cerca donde se permitía ir a los niños, con el conocimiento y consentimiento del demandado, a reunirse y jugar, estando dicho sitio contiguo a ciertas calles y caminos en medio de un distrito de una ciudad densamente habitada, y donde había maquinaria peligrosa, entre ella ruedas dentadas de naturaleza tal que atraían a los niños y llamaban la curiosidad de éstos, con conocimiento del demandado, y que alegaba que un niño de nueve años de edad que había sido atraído hacia la maquinaria peligrosa por su curiosidad infantil, recibió por ello un daño mientras ejercitaba debido cuidado y precaución por su propio instinto de conservación." Jensen v. Wetherell, 79 Ill. App. 33.

"En el caso de Dublin Cotton Oil Co. v. Jarrard (Tex. Civ. App.) 40 S. W. 531, una muchacha se pilló un pie en una máquina de un molino de algodón sufriendo una lesión. Se alegó que si ella estaba allí meramente con el conocimiento y consentimiento de la demandada, la única obligación que había para con ella era el abstenerse de realizar actos con conocimiento, cuyas consecuencias serían perjudiciales para ella; y que si ella se encontraba allí no por haber sido atraída implícita o expresamente, ni por el permiso o consentimiento del dueño, entonces ella era una transgresora y nada podría recobrar por daños y perjuicios que no le fueran ocasionados a sabiendas y voluntariamente. Pero la corte dijo que aunque esta proposición podría alegarse en contra de un adulto de experiencia y buen juicio, no era la ley que regulaba nuestras obligaciones para con los niños pequeños quienes, como las abejas y las mariposas, iban por todas partes y a cada sitio abierto, según les guiaban sus impulsos e instintos infantiles. Ellos no eran transgresores o usurpadores dentro del significado de la ley mientras no tuvieran edad bastante e inteligencia suficiente para saber y apreciar el derecho que

tiene el propietario a quitarlos de su propiedad mediante una simple orden. Ellos entendían que únicamente tenían que quedarse afuera cuando no podían entrar. Ellos no se detenían a leer los letreros o avisos, o a investigar si eran bien recibidos.'' Barrett v. Southern P. Co., 91 Cal. 296, 25 Am. St. Rep. 186, 27 Pac. 666.''

Comparando los hechos de los casos citados con los del presente, no encontramos aquella igualdad o semejanza que son necesarias para que pudiéramos llegar en éste a la misma conclusión que en ellos se llegara.

Aquí la maquinaria estaba oculta. No era visitada por niños. Ni expresa ni implícitamente se invitaba a los niños a acercarse. El ruido que traspasaba los límites del edificio y penetraba en el patio en vez de atraer más bien parece que tendía a repeler o alejar a los niños, especialmente a los de tan corta edad como lo era el demandante, infundiéndoles temor. Y si bien hemos dicho que la prueba permite concluir que la puerta quedó abierta, no se ha demostrado que lo fuera intencionalmente o a virtud de negligencia crasa, debiéndose presumir que ello se debió a algo imprevisto que no pudo evitarse ya que la norma constante era que permaneciera cerrada, especialmente por mandato de las leyes sanitarias a fin de preservar la limpieza del pan.

Con respecto al caso de Rivera, supra, la diferencia es patente en puntos esenciales. Conocemos lo dicho a ese respecto por la corte sentenciadora y parece conveniente transcribir lo consignado por la parte apelada al final de su alegato, así:

''Allí estaba el niño presente. Aquí no.

''Allí estaba acostumbrado a ir. Aquí no.

''Allí existían razones para pensar que iría. Aquí no.

''Allí los encargados de la máquina la pusieron en movimiento con el niño cerca. Aquí no.

\*   \*   \*   \*   \*   \*   \*

''Allí la relación de causa y efecto, fué inmediata y directa. Aquí no.''

Más bien que dentro de la regla del caso de Rivera, supra, cae este caso dentro de la sentada en el de *Pantoja* v. *American Railroad Company of Puerto Rico,* 45 D.P.R. 547, en el que después de citar del caso de *Pannill* v. *Potomac,* reportado en 4 L.R.A. (N.S.) 80, 83, se dijo:

"El solo hecho de ser menor la víctima del accidente no impide que pueda ser considerada como un transgresor. Cuando se trata de un niño debe tenerse mayor cuidado que cuando se trata de un adulto, debe serse más exigente con el demandado, debe tomarse en consideración el menor desarrollo de la inteligencia del niño tanto para realizar el acto constitutivo de la transgresión cuanto para poder defenderse del peligro, pero aun así no creemos que en este caso concreto pueda exigirse responsabilidad a la compañía. El menor contaba catorce años de edad. Vivía con su madre que vivía a su vez con el testigo Castro que declaró que había enviado al menor a comprarle cigarrillos ocurriendo el accidente al regresar con la compra. Bien encontrara la muerte al atrechar por dentro del campo de maniobras para llegar más pronto a su casa, ya la recibiera por haberse acercado demasiado, mientras daba de comer a la cabrita, a un vagón que lo arrolló súbitamente, es lo cierto que ocupaba un sitio que no tenía derecho a ocupar y que su muerte la produjo un accidente debido quizá a la negligencia de la demandada por no mantener en estado perfecto la aguja de uno de los desvíos de su campo de maniobras, pero sin que fuera visto por los que funcionaban la locomotora y la aguja a tiempo de poder evitar el accidente."

*Debe confirmarse la sentencia recurrida.*

El Juez Asociado Señor Wolf está conforme con el resultado.